[No. C011909. Third Dist. Mar. 10, 1993.]

PUBLIC EMPLOYMENT RELATIONS BOARD, Petitioner, v.
THE SUPERIOR COURT OF SACRAMENTO COUNTY, Respondent;
DEPARTMENT OF PERSONNEL ADMINISTRATION, Real Party in
Interest.

John W. Spittler, Robert G. Thompson, Donn Ginoza, and Jennifer A. Chambers for Petitioner.

Dennis F. Moss as Amicus Curiae on behalf of Petitioner.

No appearance for Respondent.

Christopher W. Waddell and Tamara J. Pierson for Real Party in Interest.

**BLEASE, Acting P. J.**—This matter arises on the petition of the Public Employment Relations Board (Board) for a writ of mandate directing the respondent superior court to enforce administrative subpoenas served upon the Department of Personnel Administration (DPA). The subpoenas were issued in a proceeding to determine whether, in failing to meet and confer with state employee organizations prior to proposing statutes altering the terms of employment, the administration of Governor Wilson committed unfair labor practices under the Ralph C. Dills Act (Gov. Code, §§ 3512-3524; hereafter Dills Act or Act).[1] DPA successfully opposed the enforcement of the subpoenas on the ground the Board lacks jurisdiction to proceed in the administrative action because the Dills Act does not extend to a Governor's proposals for legislation.

█ The dispositive question is whether, in the enforcement action, the superior court must defer to the Board's *initial* determination that it had such jurisdiction, a question concerning the exhaustion of administrative remedies. While recognizing that the construction of the Dills Act is a matter of law ultimately requiring judicial resolution, we shall defer to the Board's construction of the Act pending exhaustion of the administrative proceedings because its text is ambiguous concerning whether it extends to proposals for

---

[1]References to sections are to the Government Code unless otherwise indicated.

legislation and, most importantly, because deference will avoid the premature resolution of constitutional questions which arise incident to the resolution of the ambiguity.

We will issue a peremptory writ of mandate directing the respondent court to vacate its order denying the Board's application for enforcement of its subpoenas and to enter a new order granting the application.

### Facts and Procedural Background

On June 24, 1991, two recognized employee associations, the Association of California State Attorneys and Administrative Law Judges and the Professional Engineers in California Government (jointly the Unions), filed an unfair practice charge with the Board, naming the State of California and Governor Pete Wilson as the employer respondent. The charge alleges the employer violated the Dills Act by failing to give reasonable notice to the Unions prior to proposing to the Legislature in May and June 1991 statutory changes related to matters within the scope of representation, by failing to meet and confer prior to presenting the proposals to the Legislature and by failing to meet and confer regarding wages, hours and other terms and conditions of employment prior to arriving at a determination of policy or course of action. The charge alleges the proposals, intended to address the state's budget deficit, included pay reductions, furloughs, deletion of one of two tiers of the retirement system, caps on employer contributions to health insurance, discontinuance of employee and retiree retirement system trustees, and removal of funds from employee contributions to the retirement system.

On June 27, 1991, the Board's general counsel issued a complaint, alleging the State of California violated provisions of the Dills Act[2] by proposing statutes to the Legislature concerning matters within the scope of representation, including reduced pay, furloughs, and elimination of one tier

[2]The administrative complaint of unlawful practices is premised upon two provisions of the Dills Act, sections 3516.5 and 3517.

Section 3516.5 provides: "Except in cases of emergency as provided in this section, the employer shall give reasonable written notice to each recognized employee organization affected by any law, rule, resolution, or regulation directly relating to matters within the scope of representation proposed to be adopted by the employer, and shall give such recognized employee organizations the opportunity to meet and confer with the administrative officials or their delegated representatives as may be properly designated by law. [¶] In cases of emergency when the employer determines that a law, rule, resolution, or regulation must be adopted immediately without prior notice or meeting with a recognized employee organization, the administrative officials or their delegated representatives as may be properly designated by law shall provide such notice and opportunity to meet and confer in good

of the retirement system, without first giving reasonable written notice or an opportunity to meet and confer to the Unions.

A hearing was scheduled on the complaint and upon the request of counsel for the Unions, the Board issued subpoenas to the Director of DPA, a labor relations officer at DPA, the Chief Deputy Director of the Department of Finance, and the Deputy Director of the Department of Finance to attend the hearing as witnesses. The Board also issued a subpoena duces tecum to compel the custodian of records at the Department of Finance to produce: "All writings reflecting or relating to proposals made to California Legislators (individually, in committee, or otherwise) by the Governor, his agents, and/or representatives, and/or the Department of Finance, its agents and/or representatives during the period January 1, 1991-June 30, 1991, relating to the issues of employee furloughs, health care contributions for employee health care, the Public Employee Retirement System, employee wages, Merit Salary Adjustments, and contracting out employee work."

On July 15, 1991, DPA moved in the administrative proceeding to dismiss the complaint on the grounds it did not state a cause of action for violation of the Dills Act and was barred as an illicit inquiry into the motivations of legislators. DPA also moved to revoke the subpoenas on similar grounds. On August 2, 1991, the Board's administrative law judge (ALJ) ruled that the hearing would go forward. He "took [the] motion to dismiss under submission" and denied the motion to revoke the subpoenas.[3]

By letter dated August 5, 1991, DPA notified the Board that DPA would not produce the documents or witnesses at the hearing ". . . until such time as there is a final ruling by the Board on the validity of the complaint." The

faith at the earliest practical time following the adoption of such law, rule, resolution, or regulation."

Section 3517 provides: "The Governor, or his representative as may be properly designated by law, shall meet and confer in good faith regarding wages, hours, and other terms and conditions of employment with representatives of recognized employee organizations, and shall consider fully such presentations as are made by the employee organization on behalf of its members prior to arriving at a determination of policy or course of action. [¶] 'Meet and confer in good faith' means that the Governor or such representatives as the Governor may designate, and representatives of recognized employee organizations, shall have the mutual obligation personally to meet and confer promptly upon request by either party and continue for a reasonable period of time in order to exchange freely information, opinions, and proposals, and to endeavor to reach agreement on matters within the scope of representation prior to the adoption by the state of its final budget for the ensuing year. The process should include adequate time for the resolution of impasses."

[3]The ALJ did narrow the subpoena duces tecum to require production solely of documents already made public and ruled no questioning would be permitted of the subpoenaed witnesses which intruded on the Governor's claimed deliberative process privilege.

ALJ responded the same day by denying the motion to dismiss without prejudice. The ALJ indicated, to the extent DPA's letter could be construed as a request for the ALJ to join in an interlocutory appeal to the Board regarding the validity of the complaint, the request was denied because such an appeal would not " 'materially advance' the resolution of this dispute."

When DPA failed to comply with the subpoenas at the August 8, 1991, hearing on the unfair practice charge, the ALJ asked the Board's general counsel to seek a court order enforcing the subpoenas. On August 12, 1991, the general counsel filed an application in the superior court under section 3541.3 for an order to show cause and order requiring DPA's compliance with the subpoenas.[4] The court issued the order to show cause and set the matter for hearing on September 4, 1991. In opposition, DPA renewed its contention the unfair practice complaint stated no valid cause of action and relied on an interpretation of the Dills Act which is invalid as unconstitutional. The Board replied that the court lacked authority to examine the validity of the unfair practice complaint because the Board has exclusive initial jurisdiction to interpret the Dills Act.

On September 4, 1991, the superior court denied the application to enforce the subpoenas, explaining its ruling as follows:

"Application denied. The charges made are, in the opinion of the court, not a violation of the Ralph C. Dills act. Thus the proposed relief would not aid in any legitimate inquiry which the Board is entitled to make. The court is aware of the original jurisdiction of the Board to determine whether the charges are proper or not, and this court, by denying relief, is not interfering with the jurisdiction of the Board. This court will not, however, lend its processes to a proceeding which the court finds is not warranted. This ruling does not prevent the Board from proceeding, nor the Applicant from proving its case. The court merely refuses to require the Respondent to assist the Applicant in providing the evidence, all of which is public and obtainable by other means."

The Board promptly filed the petition for extraordinary relief in this court. We notified the parties the court was considering issuing a peremptory writ of mandate in the first instance and invited further opposition to be filed. DPA has not filed further opposition. We will issue a peremptory writ of mandate.

---

[4]Section 3541.3, subdivision (j), grants the Board authority "[t]o bring an action in a court of competent jurisdiction . . . to enforce the refusal to obey a subpoena." (See § 3513, subd. (h).)

## DISCUSSION

### I

The Board argues that the superior court, in denying enforcement of the administrative subpoenas based upon its interpretation of the Dills Act, encroached upon the Board's exclusive jurisdiction to make an initial determination whether the subject of its proceeding is within the jurisdictional confines of section 3516.5. It relies upon precedents arising under the National Labor Relations Act (NLRA) and the Agricultural Labor Relations Act (ALRA). DPA would distinguish these precedents on the ground that under California case law a court may properly deny enforcement of an administrative subpoena if the inquiry is unauthorized by law.

Section 3514.5 assigns the Board "exclusive jurisdiction" to make an "initial determination as to whether . . . charges of unfair practices [under the Dills Act] are justified . . . ."[5] Section 3514.5 does not, however, answer the question whether the subject of the administrative proceeding is within the provisions of the Dills Act, upon which the jurisdiction of the Board depends. Rather, resolution of the dispute turns upon the scope of judicial authority to inquire into the validity of an administrative enforcement proceeding.

Section 3541.3, subdivision (j), grants the Board authority "[t]o bring an action in a court of competent jurisdiction . . . to enforce the refusal to obey a subpoena,"[6] but provides no further guidance. To fill this void we look to the generic administrative subpoena enforcement statutes. (See §§ 11186-11188.)[7] Section 11188 affords the party against whom enforcement is sought an opportunity to "show cause" why the court should not order compliance. The statute directs issuance of the order "[i]f it appears to the court that the subpoena was regularly issued . . . ." (*Ibid.*) This provision

[5]Section 3514.5, in pertinent part, is as follows. "The initial determination as to whether the charges of unfair practices [under the Dills Act] are justified, and, if so, what remedy is necessary to effectuate the purposes of this chapter, shall be a matter within the exclusive jurisdiction of the board. Procedures for investigating, hearing, and deciding these cases shall be devised and promulgated by the board . . . ."

[6]Section 3541.3 lists the general powers and duties of the Board. It is expressly applicable to proceedings under the Dills Act. (§ 3513, subd. (h).)

[7]The other potential paradigm is section 11525, which provides for enforcement of a subpoena in administrative adjudication under the Administrative Procedure Act (APA). The Board is not listed in the Act as an agency to which it applies. (§ 11501.) Section 11525 provides for issuance by the superior court of an order to show cause why disobedience of the subpoena "should not be punished as for contempt." There is no statutory explication of the standards to be applied under this statute and little case law has occurred. (See Cal. Administrative Hearing Practice (Cont.Ed.Bar 1984) § 2.98.)

encompasses a determination whether the inquiry is one which the agency demanding production is authorized to make. (Cf., e.g., *Brovelli* v. *Superior Court* (1961) 56 Cal.2d 524, 529 [15 Cal.Rptr. 630, 364 P.2d 462]; *Younger* v. *Jensen* (1980) 26 Cal.3d 397 [605 P.2d 813].)

DPA argues that the superior court was authorized to determine whether the pending administrative complaint states a cause of action under the Dills Act and that enforcement should be denied if the subpoena is in aid of an inquiry which the Board is not authorized to make. It argues that the complaint puts in issue the application of the Dills Act to legislation proposed by the Governor and that the superior court properly concluded that the Act did not apply.

The Board does not squarely join issue with this reasoning. It bases its argument on the policy that "the scope of judicial inquiry . . . is sharply limited," relying on cases addressing the enforcement of subpoenas under the NLRA and the ALRA. (See, e.g., *Agricultural Labor Relations Bd.* v. *Laflin & Laflin* (1979) 89 Cal.App.3d 651, 663 [152 Cal.Rptr. 800]; *N.L.R.B.* v. *Intern. Medication Systems, Ltd.* (9th Cir. 1981) 640 F.2d 1110, 1114 [enforcement required " 'if the investigation is legitimate, the subpoena is not needlessly broad, and the records sought are relevant to the inquiry.' "].) The Board argues that the Dills Act is analogous to these acts and that decisions construing them should be applied. (See, e.g., *Public Employment Relations Bd.* v. *Modesto City Schools Dist.* (1982) 136 Cal.App.3d 881, 895-896 [186 Cal.Rptr. 634].) The Board submits that under the NLRA/ALRA standard the superior court has no warrant to interpret the Dills Act at this juncture of the case.

So tendered, the issue concerns the doctrine of exhaustion of administrative remedies as it applies to administrative subpoena enforcement proceedings. The doctrinal headwaters of the National Labor Relations Board (NLRB) cases, relied upon by the Board, is to be found in *Myers* v. *Bethlehem Shipbuilding Corp.* (1938) 303 U.S. 41 [82 L.Ed. 638, 58 S.Ct. 459]. The defendant shipbuilder obtained an injunction in the federal district court prohibiting the NLRB from conducting a hearing on unfair labor practices charges on the theory that the NLRA had no application because the shipbuilding operations did not impinge upon interstate or foreign commerce. The Supreme Court concluded that the federal district court was "without jurisdiction to enjoin [the] hearings" because the exclusive power to act to prevent unfair labor practices was assigned (constitutionally) to the NLRB and, by way of judicial review, to the circuit court of appeals. (*Id.* at pp. 48-49 [82 L.Ed. at pp. 642-643].) The opinion answers the principal claim of the shipbuilder as follows:

"The Corporation contends that, since it denies that interstate or foreign commerce is involved and claims that a hearing would subject it to irreparable damage, rights guaranteed by the Federal Constitution will be denied unless it be held that the District Court has jurisdiction to enjoin the holding of a hearing by the Board. So to hold would, as the Government insists, in effect substitute the District Court for the Board as the tribunal to hear and determine what Congress declared the Board exclusively should hear and determine in the first instance. The contention is at war with the long settled rule of judicial administration that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted. That rule has been repeatedly acted on in cases where, as here, the contention is made that the administrative body lacked power over the subject matter. [¶] Obviously, the rule requiring exhaustion of the administrative remedy cannot be circumvented by asserting that the charge on which the complaint rests is groundless and that the mere holding of the prescribed administrative hearing would result in irreparable damage. Lawsuits also often prove to have been groundless; but no way has been discovered of relieving a defendant from the necessity of a trial to establish the fact." (303 U.S. at pp. 50-52 [82 L.Ed. at pp. 644-645], fns. omitted.)

This reasoning was applied to a proceeding for the enforcement of an administrative subpoena in *Oklahoma Press Publishing Co.* v. *Walling* (1946) 327 U.S. 186 [90 L.Ed. 614, 66 S.Ct. 494, 166 A.L.R. 531]. An investigative subpoena was issued directed to a newspaper under the Fair Labor Standards Act, seeking evidence relevant to violation of the act and to coverage under the act. (*Id.* at p. 210 [90 L.Ed. at p. 630].) It was supported by allegations, upon information and belief, of coverage under that act. (*Id.* at p. 191 [90 L.Ed. at p. 620], fn. 4.) The newspaper contended that the subpoena could not be enforced without evidence showing probable cause in fact of coverage. The Supreme Court, relying largely upon the foregoing passage in *Myers* (*Oklahoma Press, supra,* at pp. 211-213 [90 L.Ed. at pp. 631-632]), and despite the dissimilar statutory schemes,[8] rejected the contention. It said:

"We think, therefore, that the Courts of Appeals were correct in the view that Congress has authorized the Administrator, rather than the District Courts in the first instance, to determine the question of coverage in the preliminary investigation of possibly existing violations; in doing so to exercise his subpoena power for securing evidence upon that question, by seeking the production of petitioners' relevant books, records and papers;

[8]It noted that "investigation [under the Fair Labor Standards Act] is only preliminary to instituting proceedings in court and thus has none of the finality or quasi-judicial character given to the [NLRB]'s determination . . . ." (*Id.* at p. 212 [90 L.Ed. at p. 632], fn. 51.)

and, in case of refusal to obey his subpoena, issued according to the statute's authorization, to have the aid of the District Court in enforcing it." (327 U.S. at p. 214 [90 L.Ed. at p. 632].)

*Oklahoma Press* has been cited as authority for the administrative subpoena case law, arising under the NLRA and, derivatively, the ALRA, which is relied upon by the Board. (See, e.g., *N.L.R.B.* v. *Intern. Medication Systems, Ltd., supra,* 640 F.2d at p. 1114.) It is also cited in the leading case of *Brovelli* v. *Superior Court, supra,* as authority for the language upon which is founded the California case law governing the enforcement of administrative subpoenas. (56 Cal.2d at p. 529.)

We conclude from this history that the scope of judicial authority to inquire into the jurisdiction of an agency, as a predicate to denial of enforcement of an administrative subpoena, is governed by the general doctrine concerning the exhaustion of administrative remedies. A subpoena should be enforced regardless of objections based upon claimed defenses to the charges in the administrative proceeding unless those claims present a sufficient ground to overcome the ordinary rule that a litigant may not pursue a judicial remedy until the administrative agency has reached a final decision. Otherwise the doctrine concerning exhaustion would function fitfully, permitting litigants to short-circuit or cripple administrative proceedings based upon the happenstance that obtaining evidence needed to advance the administrative proceeding requires the assistance of the courts in enforcing a subpoena.

The case law on the exhaustion of administrative remedies is voluminous. The federal case law is interchangeably cited with California case law as authority and there is no conscious divergence of California law from federal law. Tracking distinctions between federal and California case law on this subject would be of little profit since in both forums the case law appears at times internally inconsistent or anomalous. (See 4 Davis, Administrative Law Treatise (2d ed. 1983) ch. 26 (Treatise); Reed, *Exhaustion of Administrative Remedies in California* (1968) 56 Cal.L.Rev. 1061 (*Exhaustion*).) We do not imply that the federal law of exhaustion of administrative remedies must be followed or that federal precedents are controlling. The subject, at least as to California administrative agencies, is governed by California law. Nonetheless, with respect to the issues in this appeal the cases make no distinction between federal and state doctrine and we will make use of federal case law and commentary upon that case law in resolving the issue in this case.

## II

Unfortunately, identification of the problem as one of exhaustion of administrative remedies provides but an analytic point of departure.[9] The case law has not articulated rules that consistently account for the case holdings. The cornerstone of the California law is *Abelleira* v. *District Court of Appeal* (1941) 17 Cal.2d 280 [109 P.2d 942, 132 A.L.R. 715], which prominently cites and quotes the foregoing passage from *Myers* regarding exhaustion as the "long settled rule of judicial administration," applied even in cases of a claim that the agency "lacked power over the subject matter." (*Abelleira*, *supra*, at pp. 292-294.)

"The rule itself is settled with scarcely any conflict. It is not a matter of judicial discretion, but is a fundamental rule of procedure laid down by courts of last resort, followed under the doctrine of *stare decisis*, and binding upon all courts. . . . [O]nly if we recognize that the rule is jurisdictional will it be uniformly enforced. Bearing in mind the analysis of jurisdiction which has heretofore been made, and examining the authorities dealing with the rule, we are necessarily led to the conclusion that exhaustion of the administrative remedy is a jurisdictional prerequisite to resort to the courts." (17 Cal.2d at p. 293.)

However, the sweeping implication in both *Abelleira* and *Myers* that the rule of exhaustion is wholly rigid is not borne out in the ensuing cases, despite the frequent reiteration of their language to that effect. "Exhaustion of administrative remedies before going to court is sometimes required and sometimes not. Although the courts often quote from [*Myers*], 'the long

---

[9]Tracing the Board's case law to its doctrinal headwaters does outflank some of the parties' argument. The doctrine upon which the Board relies is not peculiar to unfair labor practices schemes. As appears, *Myers* is a font of the California doctrine of exhaustion of administrative remedies and, as noted, *Oklahoma Press* is similarly placed in our law regarding enforcement of administrative subpoenas. Accordingly, DPA's attempt to distinguish the Board's NLRA/ALRA case law because the general counsel of the Board does not have independent prosecutorial authority is futile. On the other hand, the Board's claim to *unusual* deference because it is assigned "exclusive" initial jurisdiction is also unfounded. The assignment of exclusive initial jurisdiction in section 3514.5 to the Board means that the only forum to pursue a cause of action for violation of the statutory rights conferred in the Dills Act is before the Board. This dispels any potential implication of a cause of action to be maintained in the superior court. If another cause of action predicated upon the acts or omissions in issue under the administrative complaint could be maintained in the superior court a problem could arise under the closely related doctrine of primary jurisdiction. (See *Farmers Ins. Exchange* v. *Superior Court* (1992) 2 Cal.4th 377, 390-391 [6 Cal.Rptr.2d 487, 826 P.2d 730].) Every case of "exhaustion," strictly speaking, as distinct from primary jurisdiction, is a case where the claim is cognizable in the first instance only before an administrative agency. (*Ibid.*)

settled rule of judicial administration that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted,' the quoted words are false almost as often as they are true." (4 Davis, Treatise, *supra*, § 26:1, p. 414; also see Reed, *Exhaustion, supra*, at pp. 1066-1067, suggesting that the broad language in *Abelleira* is unfortunate and, at p. 1096: "The California exhaustion doctrine was largely derived from a federal doctrine which was neither as clear nor as settled as the California court seemed to believe.")

The assertion in *Abelleira* that adherence to the rule "is not a matter of judicial discretion" does not mean that the determination of its reach is ministerial. ▮ "While *Abelleira* indicates that the rule of exhaustion of administrative remedies has become 'a fundamental rule of procedure . . . ,' courts have repeatedly recognized it is not inflexible dogma. There are . . . numerous exceptions to the rule including situations where the agency indulges in unreasonable delay . . . , when the subject matter lies outside the administrative agency's jurisdiction, when pursuit of an administrative remedy would result in irreparable harm, when the agency is incapable of granting an adequate remedy, and when resort to the administrative process would be futile because it is clear what the agency's decision would be." (*Green* v. *City of Oceanside* (1987) 194 Cal.App.3d 212, 222 [239 Cal.Rptr. 470], citations omitted.) To this list must be added exceptions where important questions of constitutional law or public policy governing agency authority are tendered. (See, e.g., *Sail'er Inn, Inc.* v. *Kirby* (1971) 5 Cal.3d 1, 7 [95 Cal.Rptr. 329, 485 P.2d 529, 46 A.L.R.3d 351]; *Lindeleaf* v. *Agricultural Labor Relations Board* (1986) 41 Cal.3d 861, 869-871 [226 Cal.Rptr. 119, 718 P.2d 106]; *Hull* v. *Cason* (1981) 114 Cal.App.3d 344, 358 [171 Cal.Rptr. 14].)

▮ The question we consider is whether in the light of these exceptions abstention is appropriate with regard to the claims tendered by DPA in opposition to enforcement of the subpoena. DPA's claims lie in the most troublesome area of exhaustion doctrine. "Probably more than half of all exhaustion problems on which courts write opinions involve attempts to challenge the jurisdiction of an agency in advance of completion of an administrative proceeding. The assertion may be that the agency lacks statutory authority, that its contemplated action would be unconstitutional, or that the statute under which it acts is unconstitutional." (4 Davis, Treatise, *supra*, § 26:4, p. 425.)

DPA's first claim is that the administrative complaint fails to state a cause of action because section 3516.5, upon which the claimed unfair practice is

premised, does not apply to the conduct of the Governor in proposing statutes affecting employment benefits. DPA argues that the term "law" in section 3516.5 (fn. 2, *ante*) does not extend to statutes because a statute is not a "law" that can be adopted "by the employer." The second and allied claim is that no cause of action is stated because if sections 3516.5 and 3517 are construed to apply to the gubernatorial proposal of statutes they are unconstitutional as an infringement upon the Governor's constitutional prerogative to propose legislation.

The challenges proffered by DPA present questions of law and, with due deference to the views of the administrative agency, under California law are ultimately matters for judicial resolution. (See, e.g., *Robinson* v. *Fair Employment & Housing Com.* (1992) 2 Cal.4th 226, 235, fn. 6 [5 Cal.Rptr.2d 782, 825 P.2d 767].) Nonetheless, the doctrine of exhaustion of administrative remedies requires judicial abstention until there has been a final decision in the administrative forum.

There are two leading California Supreme Court opinions on the question whether the exhaustion requirement may be avoided if the challenge is that jurisdiction to proceed is not conferred upon the administrative agency by the authorizing statute. In *United States* v. *Superior Court* (1941) 19 Cal.2d 189 [120 P.2d 26], growers and shippers of oranges sought to enjoin activity under an agricultural marketing order on the theory the order was in conflict with the statute under which it was adopted. The Supreme Court noted that the act under which the order was adopted included provisions for the administrative review of orders. (*Id.* at p. 194.) The court gave the following answer to the contention of the growers and shippers that the requirement of exhaustion did not apply to a claim that the order was a nullity because it was illegally adopted:

"[T]he doctrine of exhaustion of administrative remedies is not so limited. For example, it lies within the power of the administrative agency to determine in the first instance, and before judicial relief may be obtained, *whether a given controversy falls within the statutory grant of jurisdiction.* And even where the statute sought to be applied and enforced by the administrative agency is challenged upon constitutional grounds, completion of the administrative remedy has been held to be a prerequisite to equitable relief. If, under the rule applied in these cases, an attack upon the constitutionality of the statute does not remove the necessity for following the prescribed administrative remedy, then clearly injunctive aid may not be had

where, as here, the validity of a single regulation promulgated under such a statute is challenged." (19 Cal.2d at p. 195, citations omitted.)[10]

The broad implication that claims involving disputes over the reach of jurisdiction granted by statute require deference to the administrative agency was retrenched in *County of Alpine* v. *County of Tuolumne* (1958) 49 Cal.2d 787 [322 P.2d 449]. Alpine County sought to evade an impending administrative determination of its boundary with other counties by the State Lands Commission. The majority opinion interpreted the statute under which boundary determinations by the commission were authorized as available "only where the language of the boundary statute is clear and only ministerial action on the part of the surveyor in adequately marking the line is required." (*Id.* at p. 794.) Since the boundary dispute required the interpretation of the boundary statute, the dispute was held to be beyond the purview of the commission. The defendants relied upon *Abelleira* and the language of *United States* v. *Superior Court*, quoted above, to no avail.

"But these rules are inapplicable where, as here, the agency is given no jurisdiction to make a judicial determination of the type involved. Alpine's erroneous request to the commission to determine the disputed boundaries could not invest the commission with jurisdiction beyond that conferred on it by law or estop Alpine from pursuing its proper remedy." (*County of Alpine* v. *County of Tuolumne, supra,* 49 Cal.2d at p. 798.)

Professor Davis recounts several similar seemingly antithetical pairs of federal cases. (See 4 Davis, Treatise, *supra,* § 26:4, pp. 428-429.) He suggests the following guide to understanding and applying exhaustion doctrine to claims of lack of agency jurisdiction.

"All cases in which administrative jurisdiction is challenged without exhausting administrative remedies are not alike; such cases probably should go both ways. When pursuing the administrative remedy will cause irreparable injury and the lack of agency jurisdiction clearly appears from considerations that are not within the agency's specialized understanding, exhaustion should not be required. But when the administrative proceeding involves no unusual expense and when the agency's specialized understanding may contribute to a proper determination, a requirement of exhaustion may be desirable. Nearly all the difficult cases lie between these extremes, and what is needed is a guide for deciding such cases. [¶] ■ The

---

[10]The implication that exhaustion is invariably required "where the statute sought to be applied and enforced by the administrative agency is challenged upon constitutional grounds" has been dispelled in later cases. (See 4 Davis, Treatise, *supra,* § 26:6, p. 434 et seq., and cases cited therein.)

proposal is that to determine whether or not a court should decide a question of administrative jurisdiction without requiring exhaustion of administrative remedies, a court should consider three factors—extent of injury from pursuit of administrative remedy, degree of apparent clarity or doubt about administrative jurisdiction, and involvement of specialized administrative understanding in the question of jurisdiction." (4 Davis, Treatise, *supra*, § 26:5, p. 432.)

We adopt this as a framework for the analysis and resolution of the issues in this case. (See, e.g., *S.E.C.* v. *G.C. George Securities, Inc.* (9th Cir. 1981) 637 F.2d 685, 688, fn. 4; cf., e.g., *Kane* v. *Redevelopment Agency* (1986) 179 Cal.App.3d 899, 907, fn. 4 [224 Cal.Rptr. 922].) There are special considerations in this case that pertain to the DPA's claims that the Board lacks jurisdiction to proceed on constitutional grounds. One is that an administrative agency has no power to refuse to enforce a statute on the ground it is unconstitutional. (Cal. Const., art. III, § 3.5.) At times this consideration may render exhaustion inappropriate on grounds of futility. However, this consideration is usually offset by the consideration that courts ordinarily eschew the resolution of constitutional questions unless compelled to reach them. These considerations can and will be accommodated within the framework suggested by Professor Davis that we adopt.

### III

■ As noted, DPA tenders two related claims: that the Board lacks statutory jurisdiction over the dispute with the Governor given a correct interpretation of section 3516.5 and that the contrary interpretation would render the section unconstitutional. Since the claims are overlapping we consider them in tandem. As appears, they do not warrant judicial intervention prior to a final determination by the Board of the case.

The only injury attributable to exhaustion is the cost of participating in the Board proceedings. Such an injury is invariably present and, absent some unusual or extraordinary burden, does not favor judicial preemption. No such burden appears here; if anything the injury is less significant than is ordinarily the case where the expenses of officious examination are imposed by the government upon a private party. (See generally, *Oklahoma Press*, *supra*, 327 U.S. at p. 213 [90 L.Ed. at p. 632].)

DPA's reading of the Dills Act does not implicate a subject matter on which the Board is entitled to deference based upon its special expertise. It involves a rather straightforward construction of the Act. This removes one obstacle to judicial intervention but does not afford a reason to intervene.

Regardless of special expertise, the considered determination of meaning by the agency charged with administration of a statute is of interest. Notwithstanding that resolution of the question of construction is ultimately for the court, the court may elect to defer to the views of the agency, especially where the question of meaning is closely balanced.[11]

The issue of exhaustion must be resolved by consideration whether the language of the Act is clear about the jurisdiction of the agency, whether application of the language to the facts at hand is without doubt. This inquiry affords no basis to override the policy in favor of exhaustion. DPA argues that there is no jurisdiction under section 3516.5 (fn. 2, *ante*) because the term "law" in the statutory phrase "any law . . . directly relating to matters within the scope of representation proposed to be adopted by the employer" does not include "statute." Section 3513, subdivision (j) provides: " 'employer,' for the purposes of bargaining or meeting and conferring in good faith, means the Governor or his or her designated representatives." DPA reasons that section 3516.5 can only have application through the word "law" and that "law . . . proposed to be adopted by the employer" could be read as inapplicable on the ground that, although a statute can be proposed by the Governor, a statute cannot be "adopted" by the Governor; hence, law may not mean statute but only an executive order or regulation.

DPA submits that this ambiguity should be resolved in its favor to avoid violating the separation of powers doctrine of California Constitution, article III, section 3, by trenching upon the Governor's constitutional prerogative to propose legislation. This prerogative is located by DPA under California Constitution, article V, section 3 ("The Governor shall report to the Legislature each calendar year on the condition of the State and may make recommendations") and article IV, section 12 concerning the Governor's obligation to submit a budget to the Legislature.

We eschew a detailed discussion of the merits of DPA's claim of ambiguity. One of the principal policy concerns of the exhaustion doctrine is

---

[11]DPA suggests that the interpretation of the statutes by the Board is already known, because in authorizing pursuit of judicial enforcement of the subpoenas the Board has determined that the charge states a cause of action. DPA points to the Board's regulation which obliges it to seek enforcement of a subpoena "unless in the judgment of the Board the enforcement of such subpoena . . . would be inconsistent with law or the policies of the applicable Act." (Cal. Code Regs., tit. 8, § 32150, subd. (f).) The Board replies, in effect, that the regulation permits the Board to pursue enforcement without necessarily finally resolving such questions, i.e., when the Board is uncertain it may elect to pursue the enforcement of subpoenas and develop a full factual record before passing upon the ultimate question of statutory construction. We defer to and accept the Board's interpretation of the regulation as semantically permissible and the more sensible application of the language used.

judicial efficiency (*Farmers, supra,* 2 Cal.4th at p. 391), which cannot be served if the issue of statutory jurisdiction must be fully plumbed in order to determine whether it should be left to the agency in the *first* instance. For purposes of resolving the exhaustion question it is enough to say that the claimed ambiguity in the text of section 3516.5 might be resolved against DPA.

DPA argues that the separation of powers would be breached if the Governor's prerogative to propose legislation were fettered by requirements of prior notification to the Unions and an obligation to meet and confer with them. Once again, we imply no view on the final resolution of this claim, both to conserve judicial resources and to avoid constitutional adjudication where that may reasonably be accomplished. It suffices to note that the constitutional claim is novel, the claimed proscription does not plainly appear from the text of the Constitution, no closely analogous and compelling authority is offered, and the Legislature may ordinarily constitutionally prescribe rules regulating the exercise of power by the executive branch (see *Smith* v. *Judge of the Twelfth District* (1861) 17 Cal. 547, 558-559).

DPA has not conceded and the record does not clearly show that, but for an adjudication of the jurisdictional claims, DPA cannot prevail before the Board. Unless it appears that there is no reasonable probability the constitutional claim may be avoided in that manner, reaching out to resolve it is inappropriate. (See, e.g., *Leek* v. *Washington Unified School Dist.* (1981) 124 Cal.App.3d 43, 53 [177 Cal.Rptr. 196].) DPA's argument shows that the constitutional claim is grounded in part upon the difficulties of a newly elected Governor in complying with the asserted obligations under sections 3516.5 and 3517 and also with the constitutional requirement, California Constitution article IV, section 12, that the Governor submit a budget within the first 10 days of the calendar year. This and other particularized claims of constitutional dissonance may potentially be harmonized within the statutes before the Board, e.g., by deeming them "cases of emergency" within the meaning of section 3516.5.

In sum, there is no clear failure to state a cause of action and hence no clear lack of Board jurisdiction which affords a warrant for judicial intervention prior to a final determination by the Board. For these reasons we conclude that the trial court erred in failing to grant the application of the Board for the enforcement of the subpoenas.

Having complied with the procedural requirements delineated in *Palma* v. *U.S. Industrial Fasteners, Inc.* (1984) 36 Cal.3d 171 [203 Cal.Rptr. 626, 681

P.2d 893], we are authorized to issue a peremptory writ of mandate in the first instance.

Let a peremptory writ of mandate issue directing respondent court to vacate its order denying the Board's application for enforcement of its subpoenas and to enter a new order granting the application.

Sims, J., and Scotland, J. concurred.

The petition of real party in interest for review by the Supreme Court was denied May 27, 1993.