Filed 2/13/15  Malkenhorst v. CalPERS CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| BRUCE V. MALKENHORST, SR., | B247676 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BS141275) |
| v. | |
| CALIFORNIA PUBLIC EMPLOYEES' RETIREMENT SYSTEM et al., | |
| Defendants and Respondents. | |

APPEAL from an order of the Superior Court of Los Angeles County, Robert H. O'Brien, Judge.  Affirmed.

Law Offices of John Michael Jensen and John Michael Jensen for Plaintiff and Appellant.

Gina M. Ratto, Interim General Counsel, and Wesley E. Kennedy, Senior Staff Attorney, for Defendants and Respondents.

_____

# INTRODUCTION

Bruce V. Malkenhorst, Sr. (Malkenhorst) appeals from an order sustaining without leave to amend the demurrer filed by the California Public Employees' Retirement System (CalPERS) and its Board of Administration (Board) and dismissing the action. In this action, Malkenhorst seeks to prevent CalPERS from reducing his pension and to "abate" the ongoing administrative proceedings to address calculation of his pension. This case follows Malkenhorst's failed effort in the Orange County Superior Court (the Orange County action) to obtain the same relief—indeed, in that action Malkenhorst sought to stop the same administrative proceeding challenged here. In the Orange County action, the trial court likewise sustained a demurrer and entered a judgment for CalPERS, which was affirmed on appeal by the Fourth District. (*Malkenhorst v. California Public Employees' Retirement System* (Apr. 23, 2014, G047959) [nonpub. opn.] [2014 Cal.App.Unpub. LEXIS 2869].)

The trial court in this case sustained the demurrer on the grounds Malkenhorst failed to exhaust his administrative remedies; the Orange County Superior Court had exclusive jurisdiction over the matter because the then-pending Orange County action raised the same issues; and Malkenhorst failed to join the City of Vernon (Vernon) as an indispensable party.

On appeal, Malkenhorst challenges each of these determinations. As to his asserted failure to exhaust administrative remedies, Malkenhorst argues that in 2006 CalPERS determined that his pension complied with the Public Employees' Retirement Law (PERL; Gov. Code, § 20000 et seq.) and it is now barred by res judicata and collateral estoppel from reducing his pension in the administrative proceeding commenced in 2012. Malkenhorst argues that the trial court, not the Office of Administrative Hearings (OAH) considering his administrative appeal, should decide the questions of res judicata and collateral estoppel. Further, Malkenhorst contends he is excused from exhaustion because there is no administrative procedure for raising res judicata or collateral estoppel as a "threshold issue" in the administrative proceeding, but

2

rather, he would first need to relitigate the validity of his pension under the PERL. Notwithstanding this argument, Malkenhorst has asserted the doctrines of res judicata and collateral estoppel as defenses in the administrative proceeding.

Malkenhorst's arguments have been raised and rejected in the Orange County action as affirmed by the opinion of our colleagues in the Fourth District. While the Fourth District addressed the question of exhaustion of administrative remedies with respect to the constitutional issues raised in the Orange County action, we address whether Malkenhorst must exhaust his administrative remedies with respect to his defenses of res judicata and collateral estoppel raised below. We find that he does.[1]

The OAH and the Board in the pending administrative proceeding can and should address Malkenhorst's affirmative defenses of res judicata and collateral estoppel prior to Malkenhorst proceeding in a civil action. We therefore find this action is barred by Malkenhorst's failure to exhaust his administrative remedies and affirm on that basis.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. *CalPERS's Administration of the PERL*

The PERL established CalPERS to administer the statute and manage pensions for public employees. CalPERS's Board manages and controls the system (Gov. Code, § 20120), makes "such rules as it deems proper" (*id.*, § 20121), and determines who are employees and which employees are entitled to receive retirement benefits (*id.*, § 20125). The Board "is the sole judge of the conditions under which persons may be admitted to and continue to receive benefits" under the PERL (*id.*, § 20125) and may hold a hearing

---

[1]     Because we affirm the court's order finding that jurisdiction rested with CalPERS and the Board in the first instance to address Malkenhorst's claim that CalPERS's action was barred by res judicata and collateral estoppel and that Malkenhorst has failed to exhaust his administrative remedies, we need not reach the questions of whether the Orange County Superior Court had exclusive jurisdiction or whether Malkenhorst failed to join Vernon as an indispensable party.

3

"for the purpose of determining any question presented to it involving any right, benefit, or obligation of a person under" the PERL (*id*., § 20134). The Board has the power to correct errors and omissions with respect to active and retired members. (*Id*., §§ 20160, 20164.) Correction of errors and omissions is retroactive unless retroactive correction is not possible or is not consistent with the purposes of the PERL. (*Id*., § 20160, subd. (e).)

"Under the PERL, the determination of what benefits and items of pay constitute 'compensation' is crucial to the computation of an employee's ultimate pension benefits. The pension is calculated to equal a certain fraction of the employee's 'final compensation' which is multiplied by a fraction based on age and length of service. [Citations.]" (*City of Sacramento v. Public Employees Retirement System* (1991) 229 Cal.App.3d 1470, 1478, fn. omitted; accord, *Molina v. Board of Administration* (2011) 200 Cal.App.4th 53, 64.) "'Final compensation' is the 'highest average annual compensation earnable by a member during the three consecutive years of employment immediately preceding the effective date of his retirement' or other designated consecutive three-year period. [Citation.]" (*City of Sacramento*, *supra*, at pp. 1478-1479, fn. omitted; accord, *Molina*, *supra*, at pp. 64-65.)

"Compensation earnable" includes a member's "payrate" and "special compensation." (Gov. Code, § 20636, subd. (a).) An employee's "payrate" is "the normal monthly rate of pay or base pay of the member . . . pursuant to publicly available pay schedules, for services rendered on a full-time basis . . . ." (*Id.*, § 20636, subd. (b)(1).) The payrate does not include overtime, defined in part as pay for time spent in a part-time position where the employee also provides services in a full-time position. (*Id.*, § 20635.) "Special compensation" includes "a payment received for special skills, knowledge, abilities, work assignment, workdays or hours, or other work conditions." (*Id.*, § 20636, subd. (c)(1).)

Under the PERL, a member who is dissatisfied with a CalPERS action may appeal to the Board by filing a written notice of appeal. (Cal. Code Regs., tit. 2, § 555.1.) The member is then entitled to a hearing, and CalPERS must execute a statement of issues (SOI). (*Id.*, § 555.2.) An administrative law judge (ALJ) from the OAH conducts the

4

hearing pursuant to the Administrative Procedures Act (APA; Gov. Code, § 11500 et seq.). (Gov. Code, § 20134; Cal. Code Regs., tit. 2, § 555.4.) "All proposed decisions of hearing officers shall be referred to the Board." (Cal. Code Regs., tit. 2, § 555.4.) A final decision by the Board is reviewable by petition for writ of administrative mandate. (Gov. Code, § 11523; Code Civ. Proc., § 1094.5.)

### B. *Malkenhorst's Employment with Vernon and CalPERS's Initial Determination of His Retirement Benefits*

Vernon hired Malkenhorst in September 1975. In September 1978, Vernon created the position of City Administrator as its top administrative position, and the city council appointed Malkenhorst to that position.

In early 1995, CalPERS began an administrative investigation of Malkenhorst's pension. It requested information on the salary schedules for employees in the same group or class of employees. Vernon responded "that there is not another closely related management position. Mr. Malkenhorst serves as the City Administrator/City Clerk, City Treasurer, Director of Finance and Personnel, Purchasing Agent, Executive Director of Light & Power, and Executive Director of the Redevelopment Agency." CalPERS informed Vernon, "It would be logical that Mr. Malkenhorst would receive retirement benefits calculated on the position of City Administrator/City Clerk. However, the other duties for the positions listed . . . would be considered overtime." CalPERS requested information as to the duties and pay schedules for each of the positions and the percentage of time spent in each position. In 1996, CalPERS ended its administrative investigation without taking any action.[2]

Malkenhorst retired effective July 1, 2005. On July 18, 2005, CalPERS notified Vernon by letter that it had reviewed Malkenhorst's reported compensation. Vernon had reported Malkenhorst's pay rate to be $44,128 per month, which included a 25 percent

---

[2] The record is silent as to any communications between CalPERS and Malkenhorst leading up to CalPERS ending its investigation.

longevity payment.[3] CalPERS stated its position that the longevity pay did not qualify as special compensation within the meaning of the California Code of Regulations, title 2, section 571, and therefore could not be included in his earnable compensation for purposes of calculating his pension. CalPERS indicated in the letter that it intended to calculate Malkenhorst's retirement benefit based on a pay rate of $35,302, which excluded the longevity benefit. CalPERS notified Vernon that it had 30 days in which to appeal this decision pursuant to the California Code of Regulations, title 2, sections 555 through 555.4.

On August 11, 2005, Vernon filed a notice of appeal with CalPERS. In its appeal, Vernon claimed that its "Longevity Program" included city employees and city council members in the same benefit class, and Malkenhorst's base pay was "only for the single full time job of the City Administrator which includes numerous duties." Vernon took the position that Malkenhorst's entire pay, including longevity pay, should be considered as part of his earnable compensation for the purpose of calculating his pension.

In a September 23, 2005 letter, CalPERS responded that all of the positions held by Malkenhorst, other than City Administrator, would be considered overtime and not considered for calculation of his retirement benefits, and it rejected Vernon's arguments regarding its "Longevity Program." CalPERS also requested additional information as to Malkenhorst's base pay. Malkenhorst alleges that CalPERS's position was based in part on the information it obtained in its 1995 investigation. In response, on November 3, 2005, Vernon again addressed both the longevity pay and overtime issues.

Nine months later, on August 17, 2006, CalPERS sent a letter to Vernon finding that Malkenhorst's compensation, including calculation of his longevity pay "would be allowed." CalPERS states in the letter that it "has determined that setting differing levels

---

[3]     "Longevity pay" is defined under title 2, California Code of Regulations, section 571, subdivision (a)(1), as "[a]dditional compensation to employees who have been with an employer, or in a specified job classification, for a certain minimum period of time exceeding five years."

of payrate or special compensation by date of hire may be allowed." CalPERS stated it would notify the Benefits Division to adjust Malkenhorst's retirement allowance. CalPERS notified Malkenhorst on November 30, 2006 that his new monthly allowance would be $40,022.66, based on final compensation of $44,128 per month, and that he would receive a retroactive adjustment of $136,083.13.

## C. *CalPERS Makes a Preliminary Determination that Malkenhorst's Retirement Benefits Must Be Adjusted Downward*

On May 25, 2012, CalPERS notified Malkenhorst that it had conducted an audit of Vernon and a review of the compensation reported by Vernon for Malkenhorst. CalPERS states in its letter: "Based upon information provided by [Vernon] in its payroll reports and additional information provided in the current audit process, CalPERS has preliminarily concluded that your retirement allowance will require a downward adjustment." CalPERS stated that it had "investigated your final compensation amount and has preliminarily concluded that it appears to have been erroneously calculated at the time of your retirement because it included reported pay amounts that are not authorized by the PERL."

CalPERS explained that the publicly available pay schedules provided by Vernon in support of Malkenhorst's pay amounts fail to comply with California Code of Regulations, title 2, section 570.5, subdivision (a)(2), (4) and (6), in that they "fail to show the payrate for each identified position" or "to indicate the time base" for each position. CalPERS stated it could not identify a salary that meets the payrate definition paid solely for the normal duties performed in the position of City Administrator. Further, "[i]nformation provided by [Vernon] suggests that the payrate for City Administrator was increased over the years as additional duties and positions were added to [Malkenhorst's] responsibilities. The pay associated with such additional duties and positions does not constitute compensation earnable and should not have been used in the calculation of [Malkenhorst's] retirement benefits." (Fn. omitted.)

7

CalPERS also noted that Malkenhorst received 25 percent longevity pay, while "all other similarly situated city management positions received only 20 percent of base pay for 25 years of service." His longevity pay therefore did not meet the criteria listed in California Code of Regulations, title 2, section 571, subdivision (b)(2).

CalPERS took the position that if the compensation of an employee has been reported in error and "that amount does not constitute compensation earnable as defined in the PERL, then CalPERS has a duty to correct the error." CalPERS gave Malkenhorst until June 25, 2012 to submit documentation supporting his claim to compensation at the current rate. CalPERS informed Malkenhorst that, if after review of that documentation CalPERS's preliminary determination remained unchanged, it would reduce Malkenhorst's benefits and it might also seek to collect overpayments made to him.

Malkenhorst submitted a response on July 25, 2012. He claimed that CalPERS had no jurisdiction to reduce his pension because it was collaterally estopped by its prior decision to approve his pension, the statute of limitations for correcting a mistake had run, and his current pension was a property interest that could not be reduced without a hearing. Malkenhorst additionally claimed that CalPERS's decision to reduce his pension violated Vernon's constitutional autonomy and Malkenhorst's "constitutionally protected and vested contract rights." Malkenhorst also argued that his compensation met PERL requirements.

### D. *Malkenhorst Files an Action Against CalPERS in Orange County Superior Court*

On August 3, 2012, prior to CalPERS issuing its final decision, Malkenhorst filed a complaint for declaratory and injunctive relief and petition for writ of mandate against CalPERS and the Board, naming Vernon as a real party in interest. (*Malkenhorst v. Board of Administration* (Super. Ct. Orange County, 2012, No. 00588466).)[4] The complaint sought "to prohibit CalPERS from violating Malkenhorst's rights and the

---

[4] Malkenhorst filed the action in Orange County as a resident of that county.

8

constitutional autonomy of [Vernon], a Charter City, on internal governance and compensation issues." Specifically, the complaint sought a declaration that CalPERS cannot use the PERL or its regulations to reduce the compensation for Malkenhorst designated by Vernon, as a Charter City; an injunction to prevent CalPERS from reducing his compensation; and a writ of mandate to compel CalPERS to use the highest base pay designated in Vernon's pay schedules to calculate Malkenhorst's pension.

CalPERS demurred on the ground Malkenhorst had failed to exhaust his administrative remedies and the court therefore lacked jurisdiction over the matter under Code of Civil Procedure section 430.10, subdivision (a). On October 18, 2012, the court sustained the demurrer without leave to amend for Malkenhorst's failure to exhaust his administrative remedies.

### E. *Malkenhorst Seeks Reconsideration of the Ruling in the Orange County Action*

On October 29, 2012, Malkenhorst filed a motion for reconsideration of the Orange County Superior Court's order sustaining CalPERS's demurrer without leave to amend. Malkenhorst based his motion on asserted new precedent to require the court to rule on Vernon's "home rule" autonomy and its authority to designate employee compensation for pension purposes. Malkenhorst also argued that the new cases "do not authorize an administrative process." On December 28, 2012, the court denied the motion on the ground the cases cited did not constitute new or different law within the meaning of Code of Civil Procedure section 1008. Judgment was entered in the Orange County action on January 23, 2013. Malkenhorst filed a notice of appeal from that judgment on January 25, 2013, which appeal is discussed further below.

### F. *CalPERS Makes Its Final Determination that Malkenhorst's Retirement Benefits Must Be Adjusted Downward*

While Malkenhorst was litigating his claim in the Orange County action, CalPERS continued with its administrative process. On October 22, 2012, CalPERS wrote to Malkenhorst that it had affirmed its preliminary determination and issued a final

determination to reduce Malkenhorst's pension amount. CalPERS explained that the information Vernon provided "has not altered the determination that Mr. Malkenhorst's retirement allowance will require a downward adjustment." CalPERS found that the most recent payrate reported by Vernon that meets the definition of "payrate" on a publicly available pay schedule "was $7,785 per month for the single position of Acting City Clerk, as provided in Resolution 8780, signed June 29, 2005, effective July 1, 2005." CalPERS declined to use Malkenhorst's compensation for City Administrator because it found that his compensation included services for other simultaneous positions, which constituted overtime under the PERL.

CalPERS also adjusted Malkenhorst's longevity payment to 20 percent of compensation. It adjusted his final compensation downward from $44,128 to $9,450 per month, based on a payrate of $7,875 plus a longevity payment of $1,575.60. Based on this calculation, CalPERS reduced Malkenhorst's monthly retirement allowance to $9,654.09.[5] CalPERS notified Malkenhorst that he had a right to appeal this decision by filing a written appeal with CalPERS within 30 days under Government Code section 20134 and California Code of Regulations, title 2, sections 555 through 555.4.

**G.** *Malkenhorst Files an Appeal of CalPERS's Administrative Determination*

On December 21, 2012, while Malkenhorst's motion for reconsideration was pending in the Orange County action, Malkenhorst filed a timely appeal in the administrative action. On September 26, 2013, CalPERS filed an SOI in the administrative proceedings before the Board (*In the Matter of the Calculation of Final Compensation of Bruce Malkenhorst, Sr. and City of Vernon* (Agency Case No. 2012-0671, OAH No. 2013080917).) It identified the issue on appeal as "whether CalPERS has correctly determined . . . Malkenhorst's retirement allowance pursuant to the applicable provisions of the Government Code and Regulations."

---

[5] The reason Malkenhorst's monthly retirement allowance is greater than his final compensation is not explained in the CalPERS letter.

The appeal raises both CalPERS' determination to reduce longevity pay and its decision to reduce Malkenhorst's pension on the basis that most of his pay was for overtime above his duties as City Administrator. Following a status and trial setting conference on March 27, 2014, the administrative appeal was set for hearing on August 25, 26 and 27, and September 3 and 4, 2014.[6] The administrative appeal is still pending.[7]

## H. *Malkenhorst Files the Instant Action Against CalPERS in Los Angeles County Superior Court*

While his administrative appeal was pending—and before judgment was entered in the Orange County action—on January 16, 2013, Malkenhorst filed the instant action

---

[6] We grant Malkenhorst's first request for judicial notice pursuant to Evidence Code section 452, subdivision (c), and section 459, as to Exhibit 1, the status and trial setting conference order in the administrative proceedings (*Steed v. Department of Consumer Affairs* (2012) 204 Cal.App.4th 112, 121 [court may take judicial notice of entry of order in file but not factual findings made in order]; *Fowler v. Howell* (1996) 42 Cal.App.4th 1746, 1749-1750 [taking judicial notice of decision of State Personnel Board]) and exhibit 2, a March 6, 2014 letter from CalPERS to Malkenhorst's attorney stating that Malkenhorst's retirement allowance would be reduced effective April 1, 2014 (*In re Social Services Payment Cases* (2008) 166 Cal.App.4th 1249, 1271 [court may take judicial notice of government letters as official acts of the state's executive department]). We also grant Malkenhorst's second request for judicial notice as to exhibits 3 and 4, which are prehearing orders. (*Steed, supra,* at p. 121; *Fowler*, *supra*, at pp. 1749-1750.)

We deny Malkenhorst's second request for judicial notice as to exhibit 5, a letter from his attorney to the administrative law judge. "'"We have found no authority and none has been cited for the proposition that materials prepared by private parties and merely on file with state agencies may be judicially noticed pursuant to subdivision (c) [of Evidence Code section 452]." [Citations.]' [Citations.]" (*Stevens v. Superior Court* (1999) 75 Cal.App.4th 594, 608.)

[7] Malkenhorst filed his third request for judicial notice post-argument, requesting that we take judicial notice of the final hearing date in the administrative appeal set for February 19, 2015. We grant Malkenhorst's request for judicial notice pursuant to Evidence Code section 452, subdivision (c). However, we have denied his motion to stay the administrative proceedings for the reasons set forth in this opinion.

11

in Los Angeles County Superior Court against CalPERS.[8]  Again, he sought declaratory and injunctive relief and a writ of mandate, and he added a cause of action for administrative mandate.  He sought to have the court order CalPERS to terminate its administrative process, cease all efforts to reduce Malkenhorst's pension based on issues decided "years ago," and preserve Malkenhorst's higher pension.  The complaint alleges that "[i]n 2005, CalPERS initiated a formal appeal process about Malkenhorst's (i) reported compensation; (ii) longevity pay special compensation; and (iii) the positions that Malkenhorst held while employed" by Vernon.  "After CalPERS' and Malkenhorst's attorneys exchanged extensive communications and documents for more than a year, CalPERS determined that Malkenhorst was entitled to the higher pension and ended the administrative process.  No formal evidentiary hearing was held."  Malkenhorst alleges that based on the 2005 proceedings, collateral estoppel and res judicata bar CalPERS from reopening issues regarding his pension.

Malkenhorst also alleged in his complaint that he had "initiated a jurisdictional challenge" in the Orange County Superior Court "on the issue of whether CalPERS can invade the constitutional 'home rule' autonomy of charter cities to determine compensation and office structure." (Fn. omitted.)  The complaint asserts that the Orange County court ruled that Vernon's autonomy was preempted, and that Malkenhorst intended to appeal denial of his motion for reconsideration upon entry of judgment.

### I. *CalPERS and the Board File the Demurrer in the Instant Action*

CalPERS and the Board filed their demurrer on February 14, 2013.  The bases of the demurrer were that the court lacked jurisdiction due to Malkenhorst's failure to exhaust his administrative remedies, it lacked jurisdiction under the doctrine of exclusive concurrent jurisdiction, and Malkenhorst failed to join Vernon as an indispensable party.

---

[8]  In this action, Malkenhorst did not name Vernon as a real party in interest.  He alleged Los Angeles was the proper venue for the action because CalPERS maintained an office in Glendale.

12

(Code Civ. Proc., § 430.10, subds. (a), (d).) CalPERS and the Board also claimed that both the Orange and Los Angeles County actions involved the same parties, arose out of the same facts and transactions, and involved the same primary right, and Malkenhorst was impermissibly attempting to split his causes of action "and shopping them before different courts."

On March 19, 2013, the trial court sustained the demurrer without leave to amend on the ground it lacked jurisdiction over the matter. The court held that Malkenhorst "has failed to exhaust his administrative remedies of [CalPERS's] October 12, 2012, determination of his pension status. [He] filed a Notice of Appeal which is pending. [¶] Further, [Malkenhorst's] Orange County case which raises the same issues and rights is pending and that county has exclusive jurisdiction. Moreover, the [C]ity of Vernon is an indispensable party and has not been joined. [¶] Counsel for [Malkenhorst] did not offer any substantial matter that he could amend and thus, the demurrer is sustained without leave to amend."

Malkenhorst filed his notice of appeal from the March 19, 2013 minute order on March 21. A signed order of dismissal was filed on April 16.[9]

**J.** *Malkenhorst Seeks a Stay from This Court to Stop the Administrative Proceeding*

On September 30, 2013, Malkenhorst filed a petition for writ of supersedeas or prohibition and request for stay in this court. He sought to halt the administrative proceedings during the pendency of his appeal.[10] We summarily denied his petition on

---

[9]    Although Malkenhorst purports to appeal from the nonappealable minute order sustaining the demurrer without leave to amend, we treat the notice of appeal as a premature but valid appeal from the subsequent appealable order of dismissal. (*Maxwell v. Dolezal* (2014) 231 Cal.App.4th 93, 96, fn. 1; *In re Social Services Payment Cases*, *supra*, 166 Cal.App.4th at p. 1262, fn. 4; see Cal. Rules of Court, rule 8.104(e)(2).)

[10]    Malkenhorst previously filed a petition for writ of supersedeas or prohibition and request for stay on April 2, 2013. We summarily denied that petition on April 10.

October 3.  He filed a petition for review in the Supreme Court on October 11.  The Supreme Court denied his petition on October 15.

### K. *The Court of Appeal Affirms the Dismissal of the Orange County Action*

On April 23, 2014, the Fourth District filed its opinion on appeal in the Orange County action.  (*Malkenhorst v. California Public Employees' Retirement System*, *supra*, G047959 [2014 Cal.App.Unpub. LEXIS 2869].)  The court focused on Malkenhorst's argument that he did not need to exhaust his administrative remedies because (1) his complaint sought class-wide relief on behalf of all employees of charter cities and counties; and (2) his complaint raised constitutional and charter issues that could not be addressed by the CalPERS administrative process.  (*Id*. at pp. 2-3.)  The court rejected the first prong of this argument, stating that "Malkenhorst's claim that he is pursuing relief on behalf of a class of persons employed by charter cities and counties does not entitle him to sidestep the requirement that he exhaust administrative remedies.  First, the mere assertion of a class action does not *automatically* exempt a party from the obligation to exhaust his administrative remedy.  [Citation.] . . .  [¶]  Second, notwithstanding Malkenhorst's characterization, his complaint does not actually allege any facts suggesting either that he has been authorized to act in a representative capacity or that this case might be suitable for class action treatment."  (*Id*. at pp. 11-12.)

The court also rejected the second prong of Malkenhorst's argument that CalPERS lacked jurisdiction to adjudicate the issues he raised.  The court held:  "There is simply no question but that the determination of a retiree's pension amount is properly handled within CalPERS's administrative process.  Government Code section 20123 gives the CalPERS board authority to 'determine and . . . modify benefits for service and disability' in accordance with PERL and the rules it promulgates thereunder.  And Government Code section 20134 gives the board authority to 'hold a hearing for the purpose of determining *any question* presented to it *involving any right, benefit, or obligation of a person under this part.*' . . .  In light of this broad authorization . . . Malkenhorst can raise whatever arguments he believes establish support for his pension

14

claim—whether based on constitutional precepts, charter law, or preemption analysis—within the administrative process." (*Malkenhorst v. California Public Employees' Retirement System*, *supra*, G047959 [2014 Cal.App.Unpub. LEXIS 2869 at pp. 16-17].) The court affirmed the judgment against Malkenhorst.

## DISCUSSION

### A. *Standard of Review*

On appeal, when a demurrer has been sustained, we examine the complaint de novo to determine whether it states facts sufficient to state a cause of action. (*Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1126; *Brown v. County of Los Angeles* (2014) 229 Cal.App.4th 320, 322; *Keffeler v. Partnership Healthplan of California* (2014) 224 Cal.App.4th 322, 335, fn. 10.) Further, "[w]e follow the well-settled rule that '[w]hen reviewing a judgment dismissing a complaint after the granting of a demurrer without leave to amend, courts must assume the truth of the complaint's properly pleaded or implied factual allegations.' [Citation.]"[11] (*Loeffler v. Target Corp.* (2014) 58 Cal.4th 1081, 1100; accord, *Zelig, supra*, at p. 1126.) We do not, however, "'assume the truth of contentions, deductions or conclusions of law.' [Citation.]" (*Loeffler*, *supra*, at p. 1100; *Zelig*, *supra*, at p. 1126).[12]

---

[11] We also deem to be true facts contained in the exhibits attached to the complaint (*Van Horn v. Department of Toxic Substances Control* (2014) 231 Cal.App.4th 1287, 1292; *Rutherford Holdings, LLC v. Plaza Del Rey* (2014) 223 Cal.App.4th 221, 225, fn. 1) and those subject to judicial notice (*Van Horn*, *supra*, at p. 1292; *Brown v. County of Los Angeles*, *supra*, 229 Cal.App.4th at p. 322).

[12] Malkenhorst argues that we must accept as true his allegations that he exhausted his administrative remedies in the 2005-2006 proceeding. These allegations are conclusions of law, not allegations of fact and, as such, we do not assume the truth of the allegations. Further, as we discuss below, this is an issue to be decided in the administrative appeal in the first instance, and not by this court.

When a demurrer is sustained without leave to amend, "'we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse.' [Citations.]" (*Loeffler v. Target Corp.*, *supra*, 58 Cal.4th at p. 1100; accord, *Zelig v. County of Los Angeles*, *supra*, 27 Cal.4th at p. 1126.) "'The burden of proving such reasonable possibility is squarely on the plaintiff.' [Citations.]" (*Zelig*, *supra*, at p. 1126.)

**B.** *Exhaustion of Administrative Remedies*

Malkenhorst argues that the trial court, not the administrative proceeding, is the proper forum for deciding whether modification of his pension was barred by res judicata or collateral estoppel. He also contends that this question is one of common law properly the subject of a civil action, not a subsequent administrative proceeding. He argues that he has no adequate administrative remedy because he cannot raise the question of res judicata or collateral estoppel as a "threshold issue," but rather, must wait until completion of the administrative proceeding to have this issue determined.[13] Finally, he argues that exhaustion would be futile.

We address each argument in turn.

1. *Res judicata and collateral estoppel are affirmative defenses properly raised in the administrative process.*

The affirmative defenses of res judicata and collateral estoppel are properly raised in the administrative proceeding before CalPERS and the OAH. (*Hughes v. Board of*

---

[13]     In the ALJ's order re pretrial motions, attached as Exhibit 4 to Malkenhorst's second request for judicial notice, the judge denied Malkenhorst's motion in limine to exclude "All Evidence and Testimony Subject to Judicial Estoppel by Prior Filings in the 2005-2006 Administrative Process." However, the same order makes clear the intent of the ALJ to rule on the issues of res judicata and collateral estoppel, stating: "Whether CalPERS's determination was an 'adjudication' is a question of law and is not dependent on the beliefs of counsel for the parties involved in the process leading to that determination."

16

*Architectural Examiners* (1998) 17 Cal.4th 763, 794 [doctrine of collateral estoppel "prevents an administrative agency from reconsidering, in the absence of new facts, its prior final decision made in a judicial or quasi-judicial capacity in the context of an adversary hearing"]; *Hollywood Circle, Inc. v. Dept. of Alcoholic Beverage Control* (1961) 55 Cal.2d 728, 731-732 [res judicata applies to decision of administrative agency in judicial capacity, including decision revoking petitioner's liquor license];[14] *Berg v. Davi* (2005) 130 Cal.App.4th 223, 231 ["[i]t is well established that collateral estoppel principles apply in an administrative proceeding to prevent the impeachment of a prior final judgment"]; *California Real Estate Loans, Inc. v. Wallace* (1993) 18 Cal.App.4th 1575, 1582 ["if the elements of fraud have been proved in the civil action, collateral estoppel principles bar the licensee from attempting to relitigate those facts at the administrative proceeding"]; *Pacific Coast Medical Enterprises v. Department of Benefit Payments* (1983) 140 Cal.App.3d 197, 214 ["[i]t is now generally recognized that res judicata applies in administrative proceedings to decisions of an administrative agency made pursuant to its judicial function"].)

As the Supreme Court held in *Hollywood Circle, Inc. v. Dept. of Alcoholic Beverage Control*, *supra*, 55 Cal.2d at pages 731-732:  "The doctrine of res judicata '. . . is based upon the sound public policy of limiting litigation by preventing a party who has had one fair trial on an issue from again drawing it into controversy.'  [Citation.] This policy can be as important to orderly administrative procedure as to orderly court procedure."  Further, ""[t]he exhaustion doctrine is principally grounded on concerns favoring administrative autonomy (i.e., courts should not interfere with an agency determination until the agency has reached a final decision) and judicial efficiency (i.e., overworked courts should decline to intervene in an administrative dispute unless

---

[14]     The Supreme Court in *Hollywood Circle* distinguished the agency's exercise of its judicial function from its rulemaking power in which res judicata does not apply. (*Hollywood Circle, Inc. v. Dept. of Alcoholic Beverage Control*, *supra*, 55 Cal.2d at p. 732.)

absolutely necessary).'''  [Citation.]"  (*City of San Jose v. Operating Engineers Local Union No. 3* (2010) 49 Cal.4th 597, 609.)

The facts in *Berg v. Davi*, *supra*, 130 Cal.App.4th 223 are similar to those here.  In *Berg*, the Department of Real Estate denied Berg a real estate license based on his prior disbarment by the State Bar.  (*Id*. at pp. 225, 227.)  The appellate court upheld an ALJ's decision to apply res judicata to bar Berg from collaterally attacking the State Bar Court's findings.  (*Id*. at pp. 230-231.)  Similarly, in this case, it is the OAH that must decide in the first instance whether CalPERS can reduce Malkenhorst's pension or whether it is barred from doing so as a result of its 2006 proceedings.

Malkenhorst argues that he has no procedure for asserting res judicata and collateral estoppel at the administrative proceeding, requiring him to relitigate CalPERS's reduction of his pension.  However, the APA specifically provides that a party may file a notice of defense in response to an SOI or accusation that "[o]bject[s] to the accusation . . . upon the ground that it does not state acts or omissions upon which the agency may proceed," or "[p]resent[s] new matter by way of defense."  (Gov. Code, § 11506, subd. (a)(2), (5).)  Indeed, Malkenhorst has raised these affirmative defenses in the administrative proceeding currently pending before OAH.

2. *Malkenhorst's argument that res judicata and collateral estoppel are common law rights properly brought in a civil action is without merit.*

Malkenhorst contends that because res judicata and collateral estoppel can be asserted under common law, he need not exhaust his administrative remedies, citing to *Rojo v. Kliger* (1990) 52 Cal.3d 65, and *Farmers Ins. Exchange v. Superior Court* (1992) 2 Cal.4th 377.  However, the Supreme Court in *Rojo* addressed a different issue— whether a plaintiff asserting common law wrongful termination claims was required to exhaust administrative remedies under the Fair Employment and Housing Act (FEHA; Gov. Code, § 12900 et seq.) before filing a civil action.  The court there held that FEHA does not have a "'pervasive and self-contained system of administrative procedure'" for regulating or monitoring employer-employee relations, nor are the factual issues of a

18

"complex or technical nature beyond the usual competence of the judicial system."
(*Rojo*, *supra*, at pp. 87, 88.)  Therefore an employee must exhaust the FEHA
administrative remedy before bringing suit, but exhaustion is not required before filing a
civil action alleging nonstatutory causes of action.  (*Id*. at p. 88; accord, *Farmers Ins.
Exchange*, *supra*, at pp. 396-398, 401 [finding "'pervasive and self-contained system of
administrative procedure'" available to insurance commissioner under McBride Act to
determine challenges to good driver discount policies, requiring plaintiffs to exhaust
administrative remedies before pursuing civil action asserting Insurance Code
violations].)

Malkenhorst's argument ignores the fact that the central issue in this case is one of
statutory law—whether his pension under the PERL properly includes the longevity pay
and pay for work done other than as City Administrator—issues properly addressed in the
first instance through the administrative procedure under the PERL.  CalPERS has the
expertise necessary both to address Malkenhorst's pension issues under the PERL and to
determine whether its 2012 recalculation of Malkenhorst's pension is barred by its action
in 2006, just as the insurance commissioner had the expertise in *Farmers Ins. Exchange*
to address issues raised under the Insurance Code.

3. *Malkenhorst has no due process right to determination of the collateral
   estoppel and res judicata issues prior to the administrative hearing.*

Malkenhorst contends that he "is entitled to assert collateral estoppel/res judicata
to bar a second hearing at the threshold, yet the administrative process denies him this
basic due process right."[15]  (Italics omitted.)  Malkenhorst does not cite to any authority

---

[15]     Malkenhorst cites to the holding by the appellate court in *Kramer v. State Board
of Accountancy* (1962) 200 Cal.App.2d 163, 175, that a hearing officer cannot entertain a
demurrer or motion to dismiss where the hearing officer is alone hearing the case.
However, other appellate courts have held to the contrary that a party to an administrative
proceeding has "the right to test the sufficiency of the complaint against him while the
proceeding was yet before the board, either by demurrer or after some other method . . . ."
(*Dyment v. Board of Medical Examiners* (1922) 57 Cal.App. 260, 264; accord, *Marlo v.

19

for this proposition, instead arguing as a policy matter that without a right to assert these defenses "*at the threshold*, the agency is allowed to cause the harm (re-litigation) otherwise prevented by collateral estoppel and *res judicata*." (Fn. omitted.)

None of the cases relied upon by Malkenhorst establishes a due process right to have the issue of collateral estoppel and res judicata decided *prior to* an administrative hearing. Malkenhorst relies heavily on the holdings in *Murray v. Alaska Airlines, Inc.* (2010) 50 Cal.4th 860 and *Takahashi v. Board of Education* (1988) 202 Cal.App.3d 1464 for his argument that the trial court should decide these issues in the first instance. But neither case addresses the question of whether the administrative tribunal or civil court should decide the question of collateral estoppel or res judicata, nor do they address the question of *when* the determination needs to be made, i.e., "at the threshold" as argued by Malkenhorst.

In *Murray*, the court held, "[w]e conclude that under the particular facts and procedural posture of this case, Murray may be precluded from relitigating the factual issue of causation against Alaska in his state court wrongful termination action . . . ." (*Murray v. Alaska Airlines, Inc*, *supra*, 50 Cal.4th at p. 877.) While the court found that collateral estoppel applied to prevent Murray from relitigating his claim that he was terminated for his whistleblowing activities, the question of whether this issue should be decided by the court or administrative agency or when it should be decided was not before the court. (*Ibid*.; see also *Takahashi v. Board of Education*, *supra,* 202 Cal.App.3d at p. 1482 [applying res judicata to bar wrongful termination civil lawsuit where agency previously found the plaintiff was dismissed based on incompetence].)

---

*State Bd. of Medical Examiners* (1952) 112 Cal.App.2d 276, 279 [notice of defense "performs essentially the office of an answer and demurrer in the ordinary civil action"].) We need not reach the question of whether Malkenhorst can assert a demurrer or motion to dismiss in the administrative proceeding because that issue is not before us and, further, we find that Malkenhorst has no due process right to have his affirmative defense of res judicata or collateral estoppel decided prior to the administrative hearing.

20

Malkenhorst cites to no other authority that he had a due process right to have the issues of collateral estoppel and res judicata decided prior to an administrative hearing.

        4. *The administrative agency should decide whether it has jurisdiction.*

        Malkenhorst argues that the trial court should have decided the issue of jurisdiction in the first instance.  The question whether the trial court or administrative agency should decide whether the administrative agency has jurisdiction over a matter was addressed by the Third District in *Public Employment Relations Bd. v. Superior Court* (1993) 13 Cal.App.4th 1816 (*Public Employment Relations Bd.*), cited by both Malkenhorst and CalPERS.  The court there held, citing to our Supreme Court's holding in *United States v. Superior Court* (1941) 19 Cal.2d 189 at page 195, that "'it lies within the power of the administrative agency to determine in the first instance, and before judicial relief may be obtained, whether a given controversy falls within the statutory grant of jurisdiction.'"  (*Public Employment Relations Bd.*, *supra*, at p. 1828.)

        The courts have considered three factors in deciding whether an agency lacks jurisdiction to decide the threshold question of whether it lacks authority to resolve the underlying dispute: "the injury or burden that exhaustion will impose, the strength of the legal argument that the agency lacks jurisdiction, and the extent to which administrative expertise may aid in resolving the jurisdictional issue." (*Coachella Valley Mosquito & Vector Control Dist. v. California Public Employment Relations Bd.* (2005) 35 Cal.4th 1072, 1082 (*Coachella Valley Mosquito*); accord, *Public Employment Relations Bd.*, *supra*, 13 Cal.App.4th at p. 1830.)

        In *Coachella Valley Mosquito* the court held that exhaustion was excused where there was "a significant public interest in obtaining a definitive resolution of this fundamental legal question" of the applicable statute of limitations, and there was a strong legal argument that the agency did not have jurisdiction because of the statute of limitations bar.  (*Coachella Valley Mosquito*, *supra*, 35 Cal.4th at pp. 1082-1083.)

        In *Public Employment Relations Bd.*, the court considered whether the trial court should have deferred to the Public Employment Relations Board for its initial

determination that it had jurisdiction over a claim that the Governor committed unfair labor practices under the Ralphs C. Dills Act (Gov. Code, §§ 3512-3524) by failing to meet and confer with the unions prior to proposing legislation that altered the terms of employment of state workers. (*Public Employment Relations Bd.*, *supra*, 13 Cal.App.4th at pp. 1818-1819.) The court held that the trial court should have allowed the administrative process to go forward because there was "no clear lack of Board jurisdiction which affords a warrant for judicial intervention prior to a final determination by the Board." (*Id*. at p. 1832.) In reaching its holding, the court found that the injury resulting from the cost of participating in the agency proceedings did not support judicial preemption. Second, the court found that "the considered determination of meaning by the agency charged with administration of a statute is of interest." (*Id*. at p. 1831.) Finally, the court noted that the constitutional issue raised was novel, and the question of jurisdiction was not clear. (*Id*. at p. 1832.)

Applying the three factors to this case, we find it was proper for the administrative agency to determine jurisdiction in the first instance. First, Malkenhorst has not shown irreparable injury from being required to litigate the issues of collateral estoppel and res judicata in the administrative proceeding. He argues that pending a determination, he is suffering an 80 percent reduction in his retirement compensation, but he fails to cite specifically to how this has caused him irreparable harm. If he prevails on his claim, he can seek to recover from CalPERS any compensation amount that should have been paid to him. It is also not clear from the record that Malkenhorst would obtain a resolution of his pension claim more quickly from a trial court than from the agency. Further, as the court held in *Public Employment Relations Bd.*, the cost of participating in the administrative proceedings, "is invariably present and, absent some unusual or extraordinary burden, does not favor judicial preemption." (*Public Employment Relations Bd.*, *supra*, 13 Cal.App.4th at p. 1830.)

Second, unlike *Coachella Valley Mosquito*, it is clear here that the agency has jurisdiction to decide the res judicata and collateral estoppel issues as well as the underlying pension dispute. Finally, CalPERS has expertise in administration and

22

interpretation of the PERL, both as to whether the 2005-2006 proceeding was a final adjudication and on the underlying compensation issues.

     5. *Malkenhorst's claim does not fall within an exception to the exhaustion doctrine*

As we discuss below, a party can be excused from exhaustion of administrative remedies where the administrative procedure is inadequate or exhaustion would be futile. Neither exception applies here.

     a. The administrative procedures are adequate to address Malkenhorst's claims.

Malkenhorst argues that exhaustion of administrative remedies is not required where the challenged administrative procedures "are the very source of the asserted injury for which [the plaintiff] sought a remedy." (*Chrysler Corp. v. New Motor Vehicle Bd.* (1979) 89 Cal.App.3d 1034, 1038-1039.) In that case, however, Chrysler challenged the procedure by which the New Motor Vehicle Board decided challenges to the establishment of new dealerships, where new dealers sat on the Board. (*Id.* at p. 1039; accord, *Brown v. City of Los Angeles* (2002) 102 Cal.App.4th 155, 168 [no requirement to exhaust administrative remedies for challenge to adequacy of administrative appeal procedures].)

Malkenhorst's challenge is not to the CalPERS procedures themselves, but rather, to the determination by CalPERS that his pension should be reduced. Likewise, he does not claim that the CalPERS appeals process is inadequate other than his complaint that under the administrative procedure he cannot have his res judicata and collateral estoppel defenses resolved until the end of the administrative proceeding. (Cf. *Glendale City Employees' Assn., Inc. v. City of Glendale* (1975) 15 Cal.3d 328, 343 [employee association not required to exhaust administrative remedies where availability of employee grievance procedure would not be adequate to resolve complex case involving effect of memorandum of understanding].)

23

b. Malkenhorst has not shown that exhausting his administrative
remedies would be futile.

Malkenhorst argues that exhausting his administrative remedies would be futile because the issues have already been fully argued and decided in the administrative process and "there is no administrative remedy in the APA or OAH to preclude a second hearing . . . ." While futility is an exception to the exhaustion requirement, the exception "requires that the party invoking the exception 'can positively state that the [agency] has declared what its ruling will be on a particular case.' [Citation.]" (*Jonathan Neil & Assoc., Inc. v. Jones* (2004) 33 Cal.4th 917, 936 [finding administrative proceeding to resolve premium billing dispute by Department of Insurance not futile]; accord, *San Diego Municipal Employees Assn. v. Superior Court* (2012) 206 Cal.App.4th 1447, 1459-1460 [finding administrative process not futile even though agency had filed for temporary injunctive relief to preserve status quo].) "That administrative procedures may or even probably would have been unavailing does not excuse appellant's obligation to pursue them." (*Park 'N Fly of San Francisco, Inc. v. City of South San Francisco* (1987) 188 Cal.App.3d 1201, 1208 [requiring exhaustion of administrative remedies as to reclassification as commercial parking facility under ordinance, but allowing challenge to constitutionality of ordinance].)

As we discuss above, the lack of his ability to raise res judicata and collateral estoppel "at the threshold" of the administrative proceeding does not deprive Malkenhorst of a remedy. Similarly, there is nothing to suggest that the OAH will not afford Malkenhorst a fair hearing on the question of whether CalPERS is estopped from recalculating his pension given its actions in 2006 or that it has predetermined the issue. Accordingly, Malkenhorst has not established futility.

## C. *Conclusion*

We affirm the trial court's sustaining of the demurrer on the ground that Malkenhorst's civil action is barred by his failure to exhaust his administrative remedies. In light of this holding, we need not address the other grounds on which the trial court

sustained the demurrer. On appeal, Malkenhorst does not contend that the trial court abused its discretion in denying him leave to amend nor does he set forth any facts he could add to his complaint to state a cause of action. He therefore has failed to meet his burden to show an abuse of discretion in denial of leave to amend. (*Zelig v. County of Los Angeles*, *supra*, 27 Cal.4th at p. 1126; *In re Social Services Payment Cases*, *supra*, 166 Cal.App.4th at p. 1263.)

## DISPOSITION

The order is affirmed. CalPERS and the Board are awarded their costs on appeal.


FEUER, J.*


We concur:


PERLUSS, P. J.


WOODS, J.

---

*        Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.