[No. B230269. Second Dist., Div. Three. Mar. 8, 2012.]

VAN P. STEED et al., Plaintiffs and Appellants, v.
DEPARTMENT OF CONSUMER AFFAIRS et al., Defendants and
Respondents.

**Counsel**

Law Offices of Barry K. Rothman and Fredric R. Brandfon for Plaintiffs and Appellants.

Kamala D. Harris, Attorney General, Steven M. Gevercer, Assistant Attorney General, Joel A. Davis and Donna M. Dean, Deputy Attorneys General, for Defendants and Respondents.

**Opinion**

**ALDRICH, J.—**

## INTRODUCTION

After obtaining a writ of mandate directing California's Department of Consumer Affairs, Veterinary Medical Board (the Board), to vacate a fine and temporary suspension of his license, Van P. Steed, DVM, a veterinarian, along with South Shore Pet Clinic of San Pedro, Inc. (collectively Steed), sued the Board, and its individual members, executive officers, enforcement

coordinator, attorneys, investigator, and consultants (collectively defendants)[1] alleging various tort theories of liability arising from the disciplinary proceeding. The trial court granted defendants' special motion to strike the complaint under the anti-SLAPP[2] statute (Code Civ. Proc., § 425.16).[3] In his appeal, Steed contends that the trial court erred in ruling that he failed to meet his burden to establish a probability of prevailing on his complaint because he submitted the minute order granting his petition for writ of mandate and asked the trial court to take judicial notice of his success in the administrative proceeding. We hold that in taking judicial notice of the fact that the minute order was issued granting the writ petition, the trial court properly declined to accept as true the facts and determinations contained in the minute order. As the request for judicial notice was the only evidence Steed presented in opposition to the anti-SLAPP motion, he did not carry his burden to provide evidence of the likelihood he would prevail on the merits of his complaint. Accordingly, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Steed's complaint alleged that in 2002, his wife's former husband[4] made a report to the Board that Steed had prescribed a drug for human use. The Board's senior investigator undertook a two-year investigation. The Board sent the results of the investigation to its consultants, who provided the Board with their opinions about the case.

The complaint alleged that the Board's executive officer filed an accusation in 2006 against Steed. The accusation allegedly raised six bases for discipline: (1) furnishing a dangerous drug, (2) prescribing Claritin for Steed's own use, (3) deception in the practice of veterinary medicine, (4) violation of the Veterinary Medicine Practice Act (Bus. & Prof. Code, § 4800 et seq.), (5) negligence in prescribing medicine for which there was no evidence of medical benefit to the animal patient, and (6) improperly using human-use drugs in his veterinary practice.

---

[1] The named defendants are (1) the Board; (2)–(6) Board members Linda L. Starr, Terri A. Becker, Thomas R. Kendall, Lisa Newell, and Stephanie A. Ferguson; (7) the Board's executive officer, Susan M. Geranen; (8) the Board's assistant executive officer, Paul Sanchez; (9) the Board's enforcement coordinator, Sandra Monterrubio; (10)–(11) Board Attorneys Sheila M. Barker and Donald S. Chang; (12) Board investigator Larry Moore; and (13)–(14) Board consultants Angela Courtney, DVM, and Kay L. Hossner, DVM.

[2] " ' "SLAPP is an acronym for 'strategic lawsuit against public participation.' " [Citation.]' [Citation.]" (*Blanchard v. DIRECTV, Inc.* (2004) 123 Cal.App.4th 903, 908, fn. 1 [20 Cal.Rptr.3d 385].)

[3] All further statutory references are to the Code of Civil Procedure unless otherwise noted.

[4] Steed's wife's former husband, Mike R. Varela, was also named as a defendant. Varela is not a party to this appeal.

A hearing was held before an administrative law judge (ALJ) over four days in the summer of 2007. The ALJ issued a proposed decision recommending Steed pay a fine and costs. Thereafter, the Board, by its staff and attorneys, issued an order of nonadoption of the ALJ's proposed decision and a decision after nonadoption that ordered Steed to pay costs, fined Steed less than that suggested by the ALJ, and suspended his license for 21 days. The complaint further alleged that the Board's "considerations and the ultimate suspension" were made a public record because the Board posted on its Web site the fact that Steed's license was under disciplinary review. The complaint also alleged that while Steed's license was under review and suspension, he was precluded from applying for a license in Arizona.

Steed petitioned for a writ of mandate. The trial court issued a minute order granting Steed's writ petition (hereinafter the minute order). The complaint alleges that the Board thereafter dismissed the accusation.

Steed's operative complaint sought damages on the theories that: (1)–(2) Defendants intentionally and negligently interfered with Steed's economic advantage by conducting an incompetent investigation. (3)–(4) Defendants intentionally inflicted emotional distress on Steed by conducting an incompetent, flawed, and biased investigation. (5) Defendants defamed Steed by publishing false information about him. (6) Defendants were negligent in failing to reasonably investigate claims against Steed, filing an accusation, failing to competently review the ALJ's determination, negligently making a determination of the accusation that was harsher than that of the ALJ, and failing to recognize and understand the incorrect conclusions reached by the ALJ. (7)–(9) There being no probable cause for the Board to file an accusation or to suspend Steed's license, defendants were liable for malicious prosecution, abuse of process, and casting a false light on Steed.

Defendants filed their special motion to strike (Code Civ. Proc., § 425.16). They asserted that all of the speech and conduct alleged in the complaint were protected by the anti-SLAPP statute because they (1) occurred in the context of official proceedings and concerned matters of public interest, and (2) were made solely in connection with proceedings before the Board and the ALJ, concerning the decision to suspend Steed's license to practice veterinary medicine.

More important for our purposes, defendants asserted that Steed could not meet the shifted burden to show a probability of success on the merits because the statements, writings, and conduct of defendants were privileged (Civ. Code, §§ 47, subds. (a) [official duty privilege] & (b) [litigation privilege], 43.8 [privilege for communications to aid evaluations of a veterinarian]), and defendants are public entities or employees who are immune from

liability (Gov. Code, §§ 818.4, 821.2 [licensing and permitting immunities], 815.2, 820.2, 821.6 [prosecutorial and discretionary immunities]). Defendants also argued that Steed had no admissible evidence to support his causes of action.

In his opposition to the special motion to strike, Steed *"d[id] not dispute* that the [operative complaint] alleged activity and statements in connection with a public issue." (Capitalization omitted, italics added.) Instead, Steed argued, "absent the privileges and immunities asserted by Defendants," that Steed "would prevail on [his] claims." In support of his opposition, Steed requested that the trial court take judicial notice of five documents: (1) the accusation, (2) the ALJ's proposed decision, (3) the Board's order of nonadoption of the ALJ's proposed decision, (4) the Board's decision after nonadoption, and (5) the minute order.

The trial court granted defendants' special motion to strike and dismissed the action. The seven-page ruling discussed each of the privileges and immunities raised by defendants and concluded that each of the Board members were absolutely immune to liability (Gov. Code, §§ 818.2 [discretionary decision to suspend Steed's license], 821.6 [prosecutorial immunity], 820.2 [immunity for discretionary acts]), and so Steed could not prevail on his causes of action against them. As for the remaining public employees, the Board attorneys and consultants, the court held the immunities for some of their alleged conduct were qualified, but that Steed had not shown the likelihood of prevailing on the merits of his claims against those defendants because he presented no evidence showing he could overcome the qualified immunities. Steed appealed.

## CONTENTIONS

Steed contends he did provide evidence showing he would likely prevail at trial, namely the minute order.

## DISCUSSION

1. *Special motions to strike and the standard of review*

As the Supreme Court recently explained in *Simpson Strong-Tie Co., Inc. v. Gore* (2010) 49 Cal.4th 12 [109 Cal.Rptr.3d 329, 230 P.3d 1117] (*Simpson*), a strategic lawsuit against public participation, or SLAPP, "is a civil lawsuit that is aimed at preventing citizens from exercising their

political rights or punishing those who have done so. ' "While SLAPP suits masquerade as ordinary lawsuits such as defamation and interference with prospective economic advantage, they are generally meritless suits brought primarily to chill the exercise of free speech or petition rights by the threat of severe economic sanctions against the defendant, and not to vindicate a legally cognizable right." ' [Citation.]" (*Id.* at p. 21; see *Dove Audio, Inc. v. Rosenfeld, Meyer & Susman* (1996) 47 Cal.App.4th 777, 783 [54 Cal.Rptr.2d 830].)

"[O]ut of concern over 'a disturbing increase' in these types of lawsuits, the Legislature enacted section 425.16, the anti-SLAPP statute. (§ 425.16, subd. (a).) The statute authorized the filing of a special motion to strike to expedite the early dismissal of these unmeritorious claims. (§ 425.16, subds. (b)(1), (f).) To encourage 'continued participation in matters of public significance' and to ensure 'that this participation should not be chilled through abuse of the judicial process,' the Legislature expressly provided that the anti-SLAPP statute 'shall be construed broadly.' (§ 425.16, subd. (a).)" (*Simpson, supra*, 49 Cal.4th at p. 21.)

A special motion to strike "involves a two-step process. First, the defendant must make a prima facie showing that the plaintiff's 'cause of action . . . aris[es] from' an act by the defendant 'in furtherance of the [defendant's] right of petition or free speech . . . in connection with a public issue.' (§ 425.16, subd. (b)(1).) If a defendant meets this threshold showing, the cause of action shall be stricken unless the plaintiff can establish 'a probability that the plaintiff will prevail on the claim.' " (*Simpson, supra*, 49 Cal.4th at p. 21, fn. omitted; see *Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 67 [124 Cal.Rptr.2d 507, 52 P.3d 685].) The plaintiff bears the burden to show the second step, namely, a probability of prevailing on the merits. (*Shekhter v. Financial Indemnity Co.* (2001) 89 Cal.App.4th 141, 151 [106 Cal.Rptr.2d 843].)

Our review of an order granting or denying a motion to strike under section 425.16 is de novo. (*Blanchard v. DIRECTV, Inc., supra*, 123 Cal.App.4th at p. 918.) We consider "the pleadings, and supporting and opposing affidavits . . . upon which the liability or defense is based." (§ 425.16, subd. (b)(2).)

> 2. *There is no dispute that Steed's complaint arose from protected activity under section 425.16.*

As for the first part of the anti-SLAPP two-part test, Steed conceded in the trial court that the challenged causes of action alleged in his operative complaint arose from acts by defendants in furtherance of defendants' right of

petition or free speech in connection with a public issue. On appeal, Steed acknowledges he conceded there was no trial court error with respect to the first prong of the anti-SLAPP test. (§ 425.16, subd. (e).)

3. *Steed has not carried his burden of producing competent evidence that shows he could prevail at trial.*

■ Turning to the second part of the anti-SLAPP test, "to establish the requisite probability of prevailing (§ 425.16, subd. (b)(1)), the plaintiff [must] have ' "stated and *substantiated* a legally sufficient claim." ' [Citation.] 'Put another way, the plaintiff "must demonstrate that the complaint is both legally sufficient *and supported by a sufficient prima facie showing of facts* to sustain a favorable judgment if the evidence submitted by the plaintiff is credited." ' [Citation.]" (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 88–89 [124 Cal.Rptr.2d 530, 52 P.3d 703], italics added; accord, *Simmons v. Allstate Ins. Co.* (2001) 92 Cal.App.4th 1068, 1073 [112 Cal.Rptr.2d 397] ["a SLAPP motion, like a summary judgment motion, . . . requires an evidentiary showing"].) Thus, to carry his burden to demonstrate a probability of prevailing on their complaint, Steed must "demonstrate by admissible evidence the probability that [he] would succeed" on the merits. (*Church of Scientology v. Wollersheim* (1996) 42 Cal.App.4th 628, 655 [49 Cal.Rptr.2d 620], disapproved on other grounds in *Equilon Enterprises v. Consumer Cause, Inc., supra,* 29 Cal.4th at p. 68, fn. 5.)

Steed contends he carried his burden to produce evidence showing he would prevail at trial because he presented the minute order. Steed asserts that in issuing the writ, the trial court determined "that the proceedings before the Veterinary Board were flawed." Steed misapprehends the effect of judicial notice.

a. *The law pertaining to judicial notice of prior court orders*

■ Judicial notice is properly taken of the existence of a factual finding in another proceeding, but not of the truth of that finding. (*Fowler v. Howell* (1996) 42 Cal.App.4th 1746, 1749 [50 Cal.Rptr.2d 484]; Evid. Code, §§ 452, subds. (c) & (d), 459, subd. (a); 1 Witkin, Cal. Evidence (4th ed. 2000) Judicial Notice, § 24, pp. 118–119.) "A court may take judicial notice of [another] court's action, *but may not use it to prove the truth of the facts found and recited.* [Citations.]" (*O'Neill v. Novartis Consumer Health, Inc.* (2007) 147 Cal.App.4th 1388, 1405 [55 Cal.Rptr.3d 551], italics added.) As our Supreme Court explained, judicial notice of findings of fact does not

mean that those findings of fact are true; it means only that those findings of fact were made. (*Professional Engineers v. Department of Transportation* (1997) 15 Cal.4th 543, 590 [63 Cal.Rptr.2d 467, 936 P.2d 473].) " '[N]either a finding of fact made after a contested adversary hearing nor a finding of fact made after any other type of hearing can be indisputably deemed to have been a correct finding . . . .' " (*Ibid.*)

 *Sosinsky v. Grant* (1992) 6 Cal.App.4th 1548 [8 Cal.Rptr.2d 552], a malicious prosecution case, aptly explained the effect of judicial notice. There, the appellate court held, while the existence of any document in a court file may be judicially noticed, the truth of the matters asserted in those documents, including the factual findings of the judge who was sitting as the trier of fact, is not entitled to notice. (*Id.* at pp. 1562–1569.) *Sosinsky* explained, " 'Under the doctrine of judicial notice, certain matters are assumed to be indisputably true, and the introduction of evidence to prove them will not be required.' " (*Id.* at p. 1564.) Thus, the court reasoned, taking judicial notice of the truth of a judge's factual finding, even after a contested adversary hearing, is "tantamount to taking judicial notice that the judge's factual finding must necessarily have been correct and that the judge is therefore infallible. We resist the temptation to do so." (*Id.* at p. 1568.) The *Sosinsky* court reasoned that " '[t]here exists a mistaken notion that [taking judicial notice of court records] means taking judicial notice of the existence of facts asserted in every document of a court file, including pleadings and affidavits. However, a court cannot take judicial notice of hearsay allegations as being true, just because they are part of a court record or file.' " (*Id.* at p. 1564, italics omitted.) The *Sosinsky* court held that the trial court had "properly refused to take judicial notice of the truth of any of the factual assertions appearing in the court documents from action No. 204488 which appellants presented to the court. Appellants, having presented no 'facts' which the court could take judicial notice of the truth of, and having presented no evidence in opposition to the Grants' motion for summary judgment, were in essence opposing the Grants' motion with no evidentiary showing whatsoever." (*Id.* at pp. 1569–1570.) In sum, a court may take judicial notice that a prior order was entered, *but it may not take judicial notice of the truth of factual findings made therein.* (*Id.* at pp. 1564, 1569–1570.)[5]

---

[5] Judicial notice stands in contrast to the purpose of res judicata and collateral estoppel which operate to prevent relitigation of facts already found in another case between the same parties. As *Sosinsky* explained, "Whether a factual finding is true is a different question than whether the truth of that factual finding may or may not be subsequently litigated a second time. The doctrines of res judicata and collateral estoppel will, when they apply, serve to bar relitigation of a factual dispute even in those instances where the factual dispute was erroneously decided in favor of a party who did not testify truthfully. [Citations.]" (*Sosinsky v. Grant, supra*, 6 Cal.App.4th at p. 1569.)

Steed challenges the following trial court statements: Steed's "failure to provide any evidence whatsoever is fatal to their opposition to Defendants' motion" and Steed "elected not to submit any evidence in support of their claims . . . ." Citing *Jarrow Formulas, Inc. v. LaMarche* (2003) 31 Cal.4th 728 [3 Cal.Rptr.3d 636, 74 P.3d 737], Steed asserts that the five documents he asked the trial court to judicially notice constitute evidence. He argues that the minute order "present[s] facts which if proven at trial would result in [Steed] being the prevailing party." While we agree with Steed that the five documents in his unopposed request for judicial notice *do constitute evidence*, we are left with the question, what are these documents evidence of?

The only one of these five documents at issue here is the minute order. According to the above described rules, the trial court properly took judicial notice of the existence of the minute order, i.e., of the fact that on June 12, 2009, the trial court issued a minute order granting Steed's petition for writ of mandate. (See *Sosinsky v. Grant, supra,* 6 Cal.App.4th at pp. 1569–1570.) The court simply could not take judicial notice of the truth of the factual findings and determinations on which that minute order is based; it could not accept those findings as true. (*Ibid.*)

 b. *Steed presented no facts showing he could prevail on his complaint.*

Turning to Steed's evidentiary showing in opposition to defendants' special motion to strike, he did not demonstrate a likelihood of success on the merits. In their motion, defendants argued that the asserted privileges and governmental immunities vitiate all of the causes of action with the result that Steed could not prevail at trial. On appeal, Steed does not argue that the trial court erred in finding that the absolute privileges and immunities applied to protect all of the individual Board members, the investigator, and the attorneys for the acts the complaint alleges they committed, or that the alleged statements and conduct of the two consultant defendants were absolutely privileged. Thus, Steed forfeited any arguments of the trial court error with respect to application of these immunities and privileges. (*Badie v. Bank of America* (1998) 67 Cal.App.4th 779, 784–785 [79 Cal.Rptr.2d 273] [contentions forfeited on appeal when not raised and supported with reasoned argument and citations to authority].)

 As for the trial court's finding that the Board attorneys and consultants enjoyed qualified immunities and privileges for some of the alleged

conduct, Steed's opposition to the special motion to strike did not demonstrate that he had facts that would overcome these qualified privileges and immunities. In particular, the trial court found that the qualified privilege of Civil Code section 43.8,[6] for communications made to a professional licensing board, protected the two consultants who offered their opinions to the Board. (*Hassan v. Mercy American River Hospital* (2003) 31 Cal.4th 709, 720 [3 Cal.Rptr.3d 623, 74 P.3d 726].) As the privilege is qualified, " 'the plaintiff then [bore] the burden of proving that defendant[s] . . . made the statement with malice.' [Citations.]" (*Id.* at p. 718.) Malice includes deliberate falsehoods and false statements made without reasonable grounds to believe them true. (*Ibid.*) However, as noted, Steed presented no evidence that, if credited, would show malice, i.e., that the consultants made false statements to the Board, either knowingly or without reasonable grounds to believe them to be true. The existence of the minute order does not begin to address malice.[7]

■ Similarly, the trial court ruled that the Board attorneys enjoyed the qualified immunity under Government Code section 820.2[8] for operational, i.e., nondiscretionary acts. Legal representation provided by a public-employee attorney involves operational as distinct from policy decisions that are incident to the ordinary functions of the office of the public-employee attorney. Once the decision is made to provide legal services, the attorney's actions implementing that decision do not qualify for the immunity under Government Code section 820.2. (*Barner v. Leeds* (2000) 24 Cal.4th 676, 680 [102 Cal.Rptr.2d 97, 13 P.3d 704].) Here, the court ruled that, to the extent the complaint alleged the Board's counsel ignored evidence or otherwise fell short of operational requirements of their jobs, they could be held liable. However, Steed presented no evidence that the two Board attorneys ignored evidence or were negligent in the performance of their operational duties. The fact that the trial court issued a minute order granting Steed's petition for writ

---

[6] Civil Code section 43.8, subdivision (a) reads, "In addition to the privilege afforded by Section 47, there shall be no monetary liability on the part of, and no cause of action for damages shall arise against, any person on account of the communication of information in the possession of that person to any . . . professional society, . . . professional licensing board or division, committee or panel of a licensing board, . . . [or] peer review committee . . . when the communication is intended to aid in the evaluation of the qualifications, fitness, character, or insurability of a practitioner of the healing or veterinary arts."

[7] Nor does the existence of the minute order establish that defendants lacked probable cause. (See *Jarrow Formulas, Inc. v. LaMarche, supra*, 31 Cal.4th at pp. 742–743 [defense summary judgment in first case does not establish lack of probable cause as matter of law for purposes of subsequent malicious prosecution action where probable cause might exist at the time the claim was filed even if it ultimately failed].)

[8] Government Code section 820.2 reads, "Except as otherwise provided by statute, a public employee is not liable for an injury resulting from his act or omission where the act or omission was the result of the exercise of the discretion vested in him, whether or not such discretion be abused."

of mandate does not present facts that, if credited, establish prima facie negligence or malpractice on the part of the Board's two attorneys.

Steed appears to argue the special motion to strike raised no factual issues and so he was not required to submit evidence. He explains that defendants did not raise any issues of fact in their special motion to strike about Steed's probability of prevailing on the merits; rather defendants raised only the legal argument that various privileges and immunities applied, and then incorporated the legal reasoning contained in their concurrently filed demurrer. By incorporating the demurrer into the special motion to strike, Steed argues, defendants "were *implicitly admitting* that they accepted the facts of the [operative complaint] as true, or at least they were admitting that, for the purposes of their Anti-SLAPP Motion, the only issue to be resolved on the question of probability of prevailing was the issue of the privileges and immunities." (Italics added.) Steed explained that he did not submit declarations in opposing the special motion to strike because defendants' motion raised "no factual issues before the Court."

Regardless of what must be demonstrated by either party on demurrer—especially as the demurrer is not before us—to successfully oppose an anti-SLAPP motion, as explained, *Steed was the party who carried the burden* to show " ' "that the complaint is both legally sufficient and supported by a sufficient prima facie showing of *facts* to sustain a favorable judgment" ' " (*Navellier v. Sletten, supra,* 29 Cal.4th at p. 89, italics added) by presenting "*competent admissible evidence within the personal knowledge of the declarant*" (*Church of Scientology v. Wollersheim, supra,* 42 Cal.App.4th at p. 654, italics added). Thus, Steed always bore the burden to present competent, admissible facts in opposing the anti-SLAPP motion, irrespective of defendants' burden. Defendants' special motion to strike asserted that Steed had no admissible evidence to support his causes of action. Steed did not carry his burden in opposing the motion.

■ To summarize, the trial court properly declined to take judicial notice of the truth of any of the factual assertions contained in the minute order. As the minute order and the other four documents in his request for judicial notice are Steed's *only evidence* addressing his likelihood of prevailing on the merits, he effectively opposed defendants' motion without any evidence. Thus, Steed did not carry his burden in opposing the special motion to strike to present admissible evidence *showing facts* sufficient to sustain a favorable judgment. The trial court did not err in granting defendants' special motion to strike (§ 425.16).

## DISPOSITION

The judgment is affirmed. Appellants are to bear the cost of appeal.

Klein, P. J., and Croskey, J., concurred.