Filed 7/1/24  Shabsis v. Advocate Capital CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| MICHAEL SHABSIS et al., | B330362 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. 19STCV30802) |
| v. | |
| ADVOCATE CAPITAL, INC., et al., | |
| Defendants and Respondents. | |

APPEAL from an order of the Superior Court of Los Angeles County, Wendy Chang, Judge.  Affirmed.

Law Offices of Michael J. Libman and Michael J. Libman for Plaintiffs and Appellants.

Wilson, Elser, Moskowitz, Edelman & Dicker, David S. Eisen, and Adam LeBerthon for Defendants and Respondents Advocate Capital, Inc., Wellgen Standard, LLC, Paul Myers, Michael Swanson, and Dan Taussig.

Bird, Marella, Boxer, Wolpert, Nessim, Drooks, Licenberg & Rhow, Mark T. Drooks, and Sharon Mayer for Defendant and Respondent Bradley Arant Boult Cummings, LLP.

* * * * * *

The trial court granted a motion to strike several malicious prosecution-related claims under our anti-SLAPP[1] law (Code Civ. Proc., § 425.16)[2].  Because this was undoubtedly correct, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

### I.  Lender Obtains an Interest in Lawyer's Anticipated Recovery

Lisa Maki (Maki) was a California attorney who financed some of her litigation expenses through loans from Advocate Capital, Inc. (Advocate), a specialized lender.  In exchange for those cash advances, Maki—by written agreements in 2010 and 2015—granted Advocate a "continuing security interest" in her present and future rights to receive payments for her legal services in *any* client matter.

---

[1]     "SLAPP" is short for "strategic lawsuit against public participation."

[2]     All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

Maki did not repay her outstanding loan balance, which approached $1 million by 2018.

## II. Lawyer Has Potential Right to Payment in Personal Injury Lawsuit

### A. *Lawyer joins as cocounsel in the* Shabsis *lawsuit*

On Christmas Eve 2014, Michael Shabsis (Shabsis) sued the pharmaceutical company Pfizer Inc. (Pfizer) and the County of Los Angeles (the County), among other parties, for $35 million in injuries he inflicted upon himself while in a "delusional" state in jail after taking a Pfizer medication to stop smoking.

Initially, Shabsis's lawyer was Michael J. Libman (Libman).

In March 2017, Maki became cocounsel for Shabsis. Maki was to be paid on a contingency fee basis; with Shabsis's consent, she and Libman entered into an agreement to split fees.

### B. *Lawyer withdraws as counsel*

On August 21, 2018, the State Bar of California ordered Maki to be "involuntarily enrolled as an inactive member" pending proceedings against her for various ethical violations. One week letter, Maki withdrew as counsel for Shabsis in his lawsuit.[3]

### C. *Lawyer asserts lien against proceeds in* Shabsis *lawsuit*

On October 12, 2018, Maki served Pfizer and the County with a notice of lien for $807,278.68 in attorney fees for the work she had performed on Shabsis's case.

### D. *Resolution of* Shabsis *lawsuit*

Pfizer settled with Shabsis for an undisclosed amount. Shabsis continued to litigate against the County; the trial court

---

[3] Maki was disbarred on December 1, 2019.

3

dismissed several of his claims on summary adjudication,[4] and the jury rejected the remainder after a trial.

## III.  Lender Tries to Collect on Lawyer's Right to Payment in *Shabsis* Lawsuit

Upon learning that Maki had a potential right to payment in the *Shabsis* lawsuit, Advocate notified Libman, Pfizer, and the County that any payments owed to Maki should instead be directed to Advocate, and requested a copy of the fee-sharing agreement between Libman and Maki.

No one cooperated.

Libman responded that, despite Maki's asserted lien, Maki was owed *nothing* from the *Shabsis* case because she withdrew as counsel; that any fee-sharing agreement he had with Maki was privileged; and that he would not set aside funds in an escrow account pending resolution of the matter.

Pfizer refused to disburse any settlement funds to Shabsis until the attorney fees lien was resolved.

Maki was simply nonresponsive.

## IV.  Lender Sues for Declaratory Relief in Federal Court

Stymied in its efforts to obtain information about Maki's entitlement to the proceeds in the *Shabsis* matter, Advocate on April 16, 2019 brought a declaratory relief action in federal court against Libman, Maki, and Shabsis regarding the amount and validity of Maki's attorney fees lien (the federal action).

Maki filed a counterclaim against Libman, alleging Libman had not paid "any portion of her fees and costs" she was owed in the *Shabsis* matter.  Libman and Shabsis filed a responsive

---

4     Shabsis blames those rulings on Maki's allegedly "substandard, negligent, incompetent work."

4

counterclaim, alleging Maki was entitled to nothing and had intentionally caused Shabsis emotional distress.[5]

Soon thereafter, Maki moved abroad and affirmatively disclaimed any intention of collecting on her lien in the *Shabsis* matter. Within four weeks of learning of Maki's disclaimer, Advocate voluntarily dismissed the federal action against Libman and Shabsis with prejudice.[6]

## V. Current Action for Malicious Prosecution of the Federal Action

### A. *Pleadings*

In an amended complaint filed on February 25, 2021,[7] Libman and Shabsis (collectively, plaintiffs) sued Advocate, certain entities and executives affiliated with Advocate, and the law firm that represented Advocate in the federal action (collectively, Advocate)[8] for (1) malicious prosecution, (2)

---

[5] Libman and Shabsis also counterclaimed against Advocate, but those counterclaims were dismissed.

[6] By that time, Advocate had prevailed on summary judgment against Maki in a separate action to enforce the loan agreement, and obtained a judgment of $1,043,349.58. Libman and Shabsis also obtained a default judgment against Maki for $182,700 plus fees and costs.

[7] The original complaint filed on August 28, 2019 did not name Advocate or include any malicious prosecution allegations.

[8] The other entities named as defendants are (1) ACF 2006 Corp., which was assigned Advocate's interest in the agreement with Maki and which later merged into Advocate; and (2) Wellgen Standard, LLC (Wellgen), which had an ownership interest in Advocate until 2019.

wrongful use of civil proceedings, and (3) engaging in a civil conspiracy with Maki to maliciously prosecute—all with respect to the federal action. Plaintiffs alleged that Advocate's federal action was a "shakedown" intended to tie up Shabsis's settlement funds.

### B. *Anti-SLAPP motion*

On September 9, 2022, Advocate filed a motion to strike the claims against it under the anti-SLAPP law. Following full briefing and a hearing, the trial court granted the anti-SLAPP motion.

As a threshold matter, the court denied plaintiffs' request, made for the first time in their opposition brief, to conduct discovery into an advice-of-counsel defense because there was no indication in the record that Advocate was relying on such a defense.[9]

On the merits, the trial court ruled that plaintiffs' claims against Advocate involved activity protected by the anti-SLAPP law because those claims arose out of Advocate's prosecution of

---

The executives named as defendants are (1) Paul Myers, Advocate's CEO and former Chief Credit Officer; (2) Daniel Taussig, the CEO of Wellgen and former chairman of the board of Advocate; and (3) Michael Swanson, President of Wellgen and former CEO of Advocate.

The law firm named as a defendant is Bradley Arant Boult Cummings, LLP. Plaintiffs also sued two of the lawyers from the firm, but later dismissed them.

[9] Plaintiffs had previously filed an ex parte application broadly requesting to conduct discovery to obtain "evidence necessary for [p]laintiffs to establish a prima facie case" for their malicious prosecution claims. The trial court had denied that request.

the federal action and because that prosecution was not concededly or conclusively illegal.  The court next ruled that plaintiffs had not established a probability of prevailing on the merits of their claims, which all "sound in malicious prosecution," because plaintiffs (1) failed to offer "any competent evidence" showing the federal action lacked probable cause, and (2) failed to make a prima facie showing that the federal action was brought for the improper purpose "to shakedown [p]laintiffs and wrongfully obtain" Shabsis's settlement funds.

### C.  *Appeal*

Plaintiffs timely filed this appeal.

### DISCUSSION

Plaintiffs' briefs are teeming with invective, hyperbole, insinuations, and suggestions that they should prevail simply because Advocate is "wealthy" and "gamble[s]" with its own money by making loans.  The language used by plaintiffs' attorney in this regard is unsupported, unpersuasive, and unbecoming of officers of the court.  We will ignore it and instead focus on the legally cognizable arguments plaintiffs assert.

## I.  Arguments Regarding Procedure

Plaintiffs raise three procedural objections to the trial court's ruling on Advocate's anti-SLAPP motion.

### A.  *Timeliness*

Plaintiffs first urge that the trial court was without jurisdiction to entertain Advocate's anti-SLAPP motion because it was untimely filed.  To be sure, the anti-SLAPP law generally requires anti-SLAPP motions to be filed within "60 days" of "service of the complaint." (§ 425.16, subd. (f).)  However, the trial courts retain "discretion" to permit late filings.  (*Ibid.*; *Platypus*

7

*Wear, Inc. v. Goldberg* (2008) 166 Cal.App.4th 772, 775
(*Platypus*).)

Even if we assume for the sake of argument that Advocate's motion was untimely filed,[10] we reject this procedural challenge for two reasons. First, plaintiffs ostensibly forfeited the timeliness issue by never raising it in writing before the trial court and purportedly mentioning it only in passing at the hearing (which was not reported, and for which plaintiffs did not seek a settled statement). (*Hunter v. CBS Broadcasting Inc.* (2013) 221 Cal.App.4th 1510, 1526 [refusing to consider anti-SLAPP argument made for first time on appeal]; *Bogacki v. Board of Supervisors* (1971) 5 Cal.3d 771, 780 [arguments generally not to be considered for first time on appeal, particularly "when the new theory depends on controverted factual questions"].) Second, the trial court's consideration of the motion constitutes an implicit exercise of the court's statutorily granted discretion to permit late-filed anti-SLAPP motions, and plaintiffs offer no argument as to why the court abused its discretion in entertaining the late-filed motion beyond merely stating that it is an abuse of discretion. (*Trapp v. Naiman* (2013) 218 Cal.App.4th 113, 123 [so holding]; *Platypus, supra*, 166 Cal.App.4th at p. 787 [noting trial court's "considerable discretion" to consider untimely motions].)

---

**10** The parties hotly dispute this issue: Plaintiffs point to the 560-day gap between their *filing* of the first amended complaint naming Advocate and Advocate's filing of its anti-SLAPP motion, while Advocate argues that plaintiffs did not properly effectuate service—the trigger for the 60-day clock—until much later. In light of our assumption, we need not resolve this dispute and have no basis to consider the service-related documents plaintiffs request we judicially notice. We accordingly deny that request.

## B. *Joinder*

Plaintiffs next assert, without any analysis, that Advocate's "barebones" joinder in its law firm's lengthier anti-SLAPP motion was improper. Plaintiffs are wrong, as joinders to anti-SLAPP motions—unlike joinders to some other motions—may be sparse where, as here, they do not raise party-specific issues. (*Barak v. The Quisenberry Law Firm* (2006) 135 Cal.App.4th 654, 661.)

## C. *Discovery*

Plaintiffs lastly argue that the trial court erred in refusing to lift the automatic stay of discovery so they could depose Advocate's executives regarding Advocate's possible "advice of counsel" defense.

Although the filing of an anti-SLAPP motion automatically stays all further discovery until the trial court rules on the motion, the party opposing an anti-SLAPP motion—usually, the plaintiff—may move the court to "order that specified discovery be conducted" upon a showing of "good cause." (§ 425.16, subd. (g).) To establish good cause, the plaintiff must identify the specific discovery sought and show that this discovery is "'needed . . . to establish a prima facie case' and 'tailored to that end.'" (*Abir Cohen Treyzon Salo, LLP v. Lahiji* (2019) 40 Cal.App.5th 882, 891.) Limited discovery in this manner serves the spirit of the anti-SLAPP law by "put[ting] the plaintiff to his or her proof *before* the plaintiff can conduct discovery." (*Rogers v. Home Shopping Network, Inc.* (C.D.Cal. 1999) 57 F.Supp.2d 973, 980, italics added; *Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 65 ["stay of discovery" reflects statutory design for "early resolution" and "'ending [case] early and without great cost'"].) We review a trial court's denial to lift the stay of discovery for an abuse of discretion. (*Lahiji*, at p. 891.)

9

The trial court did not abuse its discretion in denying plaintiffs' requests to conduct discovery because plaintiffs did not establish good cause for that discovery. There was no cause to conduct discovery into the advice-of-counsel defense because Advocate was not relying on that defense. And plaintiffs did not articulate why they otherwise needed discovery to prove that their prima facie case had minimal merit. Plaintiffs urge that *they* should be excused from the anti-SLAPP law's limits on discovery if Advocate is excused from the anti-SLAPP law's 60-day timeliness requirement, but this is a false equivalency where, as here, the trial court acted within its discretion in denying discovery and in entertaining what we have assumed is a late-filed motion.

## II. Arguments Regarding the Merits of the Anti-SLAPP Ruling

### A. *The Anti-SLAPP law, generally*

The anti-SLAPP law "provides a procedure for weeding out, at an early stage, *meritless* claims arising from protected activity." (*Baral v. Schnitt* (2016) 1 Cal.5th 376, 384 (*Baral*).) Specifically, the anti-SLAPP law protects—and thus "subject[s] to a special motion to strike"—any "cause of action . . . arising from any act of [a] person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue." (§ 425.16, subd. (b)(1).)

When a party moves to strike a cause of action under the anti-SLAPP statute, a trial court has two tasks. (*Barry v. State Bar of California* (2017) 2 Cal.5th 318, 321 (*Barry*).)

First, the court must evaluate whether the moving party has "made a threshold showing that the challenged cause of

10

action arises from protected activity." (*Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1056.)

Second, and only if the court concludes that the moving party has made this "threshold showing," the court must examine whether the nonmoving party has "established . . . a probability that [he] will prevail on the [challenged cause of action]." (§ 425.16, subd. (b)(1); *Oasis West Realty, LLC v. Goldman* (2011) 51 Cal.4th 811, 819-820.) That burden is met if the nonmoving parties demonstrate that the challenged cause of action has "minimal merit" (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 94), and they do so by making a "prima facie factual showing"—based on admissible evidence—"sufficient to sustain a favorable judgment" on that cause of action. (*Baral*, *supra*, 1 Cal.5th at pp. 384-385; *Steed v. Dept. of Consumer Affairs* (2012) 204 Cal.App.4th 112, 124.) In assessing the sufficiency of this showing, "a plaintiff seeking to demonstrate the merit of [his] claim 'may not rely solely on [his] complaint.'" (*Monster Energy Co. v. Schechter* (2019) 7 Cal.5th 781, 788 (*Monster Energy*).) While the court must ""'accept as true the evidence favorable to the [nonmoving party]'"" (*Oasis West*, at p. 820), "speculative inferences not supported by the evidence proffered need not be considered" (*Monster Energy*, at p. 795). If the nonmoving parties satisfy their burden, the anti-SLAPP motion must be denied; if they fail to do so, the pertinent cause of action must be stricken. (*Barry*, *supra*, 2 Cal.5th at p. 321.)

We review an order granting an anti-SLAPP motion de novo. (*Monster Energy*, *supra*, 7 Cal.5th at p. 788.)

11

**B.**    *Analysis*

1.    *Protected activity*

We independently agree with the trial court's ruling that plaintiffs' malicious prosecution claims focused on Advocate's litigation of the federal action arise from protected activity. As pertinent here, activity protected by the anti-SLAPP law includes "any . . . statement or writing made before" or "in connection with an issue under consideration . . . by a . . . judicial body" (§ 425.16, subd. (e)). Thus, claims based on the malicious prosecution of a lawsuit—which, by definition, involve statements and writings before and in connection with a court proceeding—are almost always "protected activity." (*Maleti v. Wickers* (2022) 82 Cal.App.5th 181, 200-202 (*Maleti*) [so holding]; *Jarrow Formulas, Inc. v. LaMarche* (2003) 31 Cal.4th 728, 734-735 ["By definition, a malicious prosecution suit alleges that the defendant committed a tort by filing a lawsuit"]; *Kim v. R Consulting & Sales, Inc.* (2021) 67 Cal.App.5th 263, 271.)

Plaintiffs resist this conclusion by trying to shoehorn Advocate's conduct into the anti-SLAPP law's narrow exception for illegal conduct. The anti-SLAPP law exempts from its definition of protected activity illegal conduct if (1) that conduct is "criminal," as opposed to merely violative of a statute; and (2) the criminality of that conduct is either *conceded* by the defendant or *conclusively established as a matter of law*. (*Flatley v. Mauro* (2006) 39 Cal.4th 299, 320 (*Flatley*); *Dziubla v. Piazza* (2020) 59 Cal.App.5th 140, 151.) Conduct meeting this definition is "not in furtherance of constitutionally protected speech or petition rights," and hence is outside the anti-SLAPP law's protection. (*Flatley*, at p. 324.)

Here, plaintiffs argue that Advocate's federal action constituted illegal conduct under two theories.[11]

First, plaintiffs urge that the federal action sought disclosure of the fee arrangement between Maki and Libman, including their privileged fee sharing agreement, thereby transgressing plaintiffs' First Amendment right "not to speak." But seeking relevant discovery in support of a lawsuit is neither a violation of the First Amendment nor a conclusively criminal act.

Second, plaintiffs urge that Advocate, by filing the federal action, "put the proverbial litigation gun against" their "temples" and "threaten[ed] to pull the trigger and expose [Shabsis's] secret and confidential settlement" with Pfizer, thereby constituting a conclusive violation of the crime of extortion. This argument is both histrionic and inaccurate. "Extortion is the obtaining of property . . . from another, with his . . . consent . . . induced by a wrongful use of force or fear" (Pen. Code, § 518); among other things, fear includes being "induced by a threat . . . [t]o expose a secret" (*id.*, § 519, subd. (4)). (See also *Flatley*, *supra*, 39 Cal.4th at pp. 326-327 [discussing extortion].) In filing the federal action, Advocate sought only to ascertain the existence and amount of Maki's entitlement to fees in the *Shabsis* action in order to assert its own security interest in that entitlement—and it filed the federal action only after Libman and Maki refused to resolve those questions short of litigation; what is more, Advocate repeatedly disclaimed any interest in the funds to which *Shabsis*

---

11      Plaintiffs have ostensibly abandoned their initial theory presented to the trial court that Advocate's federal action conclusively constituted the federal crimes of mail and wire fraud.

13

was entitled under his settlement with Pfizer.  This was not extortion.

### 2. *Minimal merit*

We also independently agree with the trial court's ruling that plaintiffs did not establish that their malicious prosecution claims have minimal merit.

To prevail on their malicious prosecution-based claims, plaintiffs must prove that (1) the federal action was commenced by or at the direction of Advocate and was pursued to a legal termination favorable to plaintiffs, (2) the federal action was brought or maintained without probable cause, and (3) the federal action was initiated with malice.  (*Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 292; *Maleti, supra*, 82 Cal.App.5th at p. 203.)  Because it is undisputed that Advocate brought the federal action and that it was terminated in plaintiffs' favor when Advocate dismissed the action, we focus on whether plaintiffs have adduced sufficient evidence of the remaining two elements to demonstrate minimal merit.

### a. Probable cause

For purposes of the tort of malicious prosecution, a claim is brought—or maintained—without probable cause only if "no reasonable attorney," based on the facts known at the time, "would have thought the claim tenable."  (*Wilson v. Parker, Covert & Chidester* (2002) 28 Cal.4th 811, 824, partially superseded by statute on other grounds as stated in *Hutton v. Hafif* (2007) 150 Cal.App.4th 527, 547; *Sheldon Appel Co. v. Albert & Oliker* (1989) 47 Cal.3d 863, 878 (*Sheldon Appel*); *Citizens of Humanity, LLC v. Hass* (2020) 46 Cal.App.5th 589, 599 (*Citizens of Humanity*); *Zamos v. Stroud* (2004) 32 Cal.4th 958, 971; see also *id.* at p. 967, fn. 6 [continuation of civil

14

proceedings is subject to liability for wrongful civil proceedings].) That a claim ends up being unsuccessful is insufficient to show it was "not tenable"; instead, a claim is "not tenable" only if "any reasonable attorney would agree that it is totally and completely without merit." (*Roche v. Hyde* (2020) 51 Cal.App.5th 757, 794.)

Advocate's claims in the federal action—specifically, for declaratory relief as to the amount and validity of Maki's attorney fees lien against Shabsis's settlement—were legally tenable. Maki agreed by contract to grant Advocate a security interest in all payments to which she was entitled in any client matter, and Maki had asserted by lien that she was owed $807,278.68 in fees from Libman and Shabsis in the *Shabsis* matter. When Libman and Shabsis disputed that Maki was owed anything, Advocate—standing in Maki's shoes as the holder of a security interest in that possible lien—initiated and maintained the federal action to resolve that dispute. No reasonable attorney would think that those declaratory relief claims were totally and completely without merit.

Plaintiffs respond with a plethora of arguments that we have dumped into seven different buckets.

First, plaintiffs point to the allegations in their operative complaint as evidence that Advocate's federal action was wholly untenable. Because an anti-SLAPP motion "'is an evidentiary motion,'" a plaintiff's showing of minimal merit must rely on *evidence*; because allegations in the pleadings are not evidence, they cannot be used to show that a plaintiff's claim has minimal merit. (*Contreras v. Dowling* (2016) 5 Cal.App.5th 394, 405; *Paiva v. Nichols* (2008) 168 Cal.App.4th 1007, 1017.)

Second, plaintiffs argue that Advocate lacked probable cause to pursue its security interest in Maki's potential recovery

15

of fees because Maki automatically and irrevocably lost any right to fees for her work in the *Shabsis* matter once she withdrew as counsel.  Plaintiffs are wrong on the law here.  A lawyer who withdraws from a case forfeits any right to recover a contingency fee at the *contractually agreed-upon* rate, but may still recover for work done in the matter under a quantum meruit theory if she had "justifiable cause" to withdraw.  (*Rus, Miliband & Smith v. Conkle & Olesten* (2003) 113 Cal.App.4th 656, 671-676; *Duchrow v. Forrest* (2013) 215 Cal.App.4th 1359, 1382-1383; *Estate of Falco* (1987) 188 Cal.App.3d 1004, 1012-1016.)  When the withdrawal is for ethical reasons, whether it constitutes "justifiable cause" turns on whether the withdrawal was mandatory under the State Bar rules and that the "'overwhelming and primary motivation'" for the withdrawal was to adhere to those rules.  (*Rus*, at p. 674, fn. 10.)  Here, Maki withdrew as counsel in the *Shabsis* matter within a week of being declared an "inactive" member of the Bar, and subsequently asserted a lien on any recovery in that matter; a reasonable attorney aware of these facts could conclude that Maki had "justifiable cause" to withdraw as counsel and hence had some entitlement to recovery of fees in quantum meruit.  Plaintiffs have failed to adduce evidence to the contrary.

Third, plaintiffs argue that Advocate's federal action utterly lacked merit because (1) the fee-sharing agreement between Libman and Maki is absolutely privileged, and (2) the success of Advocate's action hinged entirely on obtaining a copy of that agreement.  Both premises of plaintiffs' argument are wrong.  As to the first, although a "written fee contract" between a lawyer and client may be a "confidential communication" covered by the attorney-client privilege (Bus. & Prof. Code, § 6149), plaintiffs

16

offer no precedent for the proposition that a fee-sharing agreement between two lawyers is also absolutely and completely privileged (as opposed to privileged to the extent it reveals confidential communications with the client). As to the second, Maki's recovery—in light of her withdrawal as counsel—would likely be calculated on a quantum meruit basis rather than the contractual rate set forth in the fee-sharing agreement; thus, that agreement was not critical to Advocate's recovery. (*Los Angeles County Bd. of Supervisors v. Superior Court* (2016) 2 Cal.5th 282, 297-298.)

Fourth, plaintiffs argue that Advocate lacked probable cause to initiate the federal action because Advocate previously admitted that it had no lien against Shabsis's settlement. This argument rests on a contortion of the record: Advocate freely admitted that it was not "assert[ing] a lien" on Shabsis's own settlement recovery, but consistently maintained that it had a "security interest in any attorney's fees and other amounts" *Maki* was asserting against that recovery.

Fifth, and relatedly, plaintiffs argue that Advocate lacked probable cause to continue prosecuting the federal action after (1) Libman told Advocate that Maki had no valid attorney fees lien in light of her withdrawal; and (2) Maki sent Libman a text message on April 30, 2019 indicating, "[Advocate] ha[s] no lien and you know it." This argument also lacks merit. Advocate was not required to accept Libman's assertion that Advocate's claims lacked merit; a party's lawsuit does not somehow become indisputably meritless simply because opposing counsel says so. (See *Daniels v. Robbins* (2010) 182 Cal.App.4th 204, 223 [letter from litigation adversary disagreeing with allegations in lawsuit does not put lawyer on notice of falsity of those allegations].)

17

(This is particularly true where, as noted above, opposing counsel may well be wrong.)  Further, it appears that plaintiffs did not alert Advocate to Maki's text message until years after the federal action was dismissed; because reasonable lawyers do not have god-like omniscience, Maki's text message to her former cocounsel had no effect on what a reasonable person in Advocate's position would have known about the merits of its lawsuit while the lawsuit was still pending.  And even if we assume such omniscience, Maki's self-serving statement contradicted Maki's earlier acts of granting Advocate a security interest in any fees to which she was entitled and asserting such an entitlement in the *Shabsis* recovery.

Sixth, plaintiffs argue that Advocate lacked probable cause to initiate and continue the federal action because Advocate did not show that it conducted any legal research before "rush[ing] to file[]" that action.  Plaintiffs have it backwards.  The burden is not on Advocate to show that it conducted legal research in order to *subjectively* conclude that the federal action was tenable.  To the contrary, the burden is on plaintiffs to show that an objectively reasonable lawyer would conclude that the federal action was not tenable.  More to the point, the adequacy of a party's legal research is not relevant to this objective inquiry. (*Sheldon Appel*, *supra*, 47 Cal.3d at p. 883 [so noting].)

Seventh and lastly, plaintiffs argue there are factual disputes regarding the existence of probable cause, such that this anti-SLAPP motion cannot be decided by a court and must therefore be submitted to a jury.  (*Sheldon Appel*, *supra*, 47 Cal.3d at p. 875.)  This argument is silly.  The entire *point* of an anti-SLAPP motion is to obviate the need for a jury trial for those claims that lack minimal merit; to suggest that there must be a

18

jury trial to assess whether a claim is so meritless that no jury trial is warranted would be self-defeating. Thus, plaintiffs' importation of summary judgment verbiage into the context of an anti-SLAPP motion is inappropriate. More to the point, the fact that the tenability of the federal action is debatable means that it *is* tenable.

b.    Malice

Although we may affirm the trial court's order granting the anti-SLAPP motion because plaintiffs failed to make a prima facie showing of minimal merit on the probable cause element, plaintiffs also failed to make a prima facie showing that Advocate filed the federal action with malice. (*Sheldon Appel*, *supra*, 47 Cal.3d at p. 875 [if probable cause exits, "the malicious prosecution action fails, whether or not there is evidence that the prior suit was maliciously motivated"].)

For purposes of a malicious prosecution claim, "malice" refers to Advocate's "subjective intent in initiating" and maintaining the federal action. (*Sierra Club Foundation v. Graham* (1999) 72 Cal.App.4th 1135, 1156-1157; *Sheldon Appel*, *supra*, 47 Cal.3d at p. 875.) To establish malice, plaintiffs have to adduce evidence that Advocate acted with "hostility," that it acted with "ill will toward" plaintiffs, or that it "instituted [the federal action] primarily for an improper purpose." (*Sierra Club*, at p. 1157.) "'Because direct evidence of malice is rarely available, "malice is usually proven by circumstantial evidence and inferences drawn from the evidence."'" (*Citizens of Humanity*, *supra*, 46 Cal.App.5th at p. 607.)

Plaintiffs offered no evidence whatsoever to show that Advocate harbored malice in initiating and continuing the federal action. Instead, plaintiffs chiefly assert Advocate's malice may be

19

inferred from the lack of probable cause supporting the federal action.  This is wrong legally because the absence of probable cause alone does not establish malice.  (*Padres L.P. v. Henderson* (2003) 114 Cal.App.4th 495, 522; *HMS Capital, Inc. v. Lawyers Title Co.* (2003) 118 Cal.App.4th 204, 218.)  And this is wrong factually because, as noted above, Advocate had probable cause to initiate and maintain the federal action.  Plaintiffs also assert that Advocate acted with the improper purpose of delaying matters because it only asserted claims for declaratory relief rather than a claim for recovery under a quantum meruit theory.  This assertion ignores that Advocate sought declaratory relief "determining *the amount*" to which it was entitled, which would have necessarily included examination of quantum meruit principles.

## DISPOSITION

The order is affirmed.  Advocate is entitled to its costs on appeal.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, J.
HOFFSTADT

We concur:


_____, P. J.
LUI


_____, J.
CHAVEZ


20